(Surrogate's Court, Westchester County. November, 1900.)

1. TREATIES—ALIEN DECEDENTS—ADMINISTRATION OF ESTATES—OBLIGATIONS.

State statutes relating to the administration of estates of alien decedents must give way in so far as they do not accord with the obligations of the federal government under its treaties with foreign nations, and the procedure of the local courts in relation thereto must conform as nearly as practicable to such obligations.

2. SAME—ITALIAN SUBJECTS—CONSULAR OFFICERS—RIGHT TO ADMINISTER.

The Italian commercial treaty of 1871 provides (article 22) that the citizens of each of the parties may dispose of their personalty by testament or otherwise, and the representatives, being citizens of the other party, shall succeed to their personalty, whether by testament or ab intestato, and that they or others for them may take possession and dispose of it at will, paying such dues only as inhabitants of the country wherein the goods are shall be subject to pay in like cases. The consular treaty of 1878 provides (article 9) that consular officers may have recourse to the judicial or executive authorities of the respective countries for the purpose of complaining of any infraction of the treaties or conventions between them, and to defend the rights and interests of their countrymen. Article 16 requires the local authorities, in case of the death of an Italian citizen in the United States, who has no known heir or testamentary executor, to give notice of the fact to the Italian

consuls or consular agents, so that information may be transmitted at once to the parties interested. Article 17 declares that consular officers in both countries shall enjoy all the rights,' prerogatives, and privileges granted to those of the same grade of the most favored nations; and the treaty of July 27, 1853, with the Argentine republic provides (article 9) that, if any citizen of either party dies intestate in either country, the consul general or consul of the nation to which he belonged shall have the right to intervene in the possession and administration of his estate, conformably with the laws of the country, for the benefit of the creditors and legal heirs. *Held*, that not only by inherent right, but by specific treaty provision, the Italian consul general was entitled to administer the estate of an Italian subject dying intestate within his jurisdiction in the United States, though the administration must be had as provided in the treaty of the Argentine republic, conformably with the laws of the United States, for the benefit of the creditors and legal heirs, and should be granted to him only on giving the bond provided for by law for the security of resident creditors, if there be any.

Application by Giovanni Branchi, Italian consul general, for letters of administration on the estate of Giuseppi Fattosini, sometimes called John Gaggene, alias Giuseppi Mattorini, deceased. Granted.

D. E. Humphreys, for petitioner.

SILKMAN, S. This is an application upon the petition of Giovanni Branchi, consul general of Italy, for the issuance of letters of administration to him upon the estate of the above-named decedent, an Italian subject, who died and left property within the county of Westchester. The petition alleges that the decedent left, him surviving, a widow and two minor children, his only next of kin, all residing at Castelletto, Verona, Italy. In the absence of creditors, under the state statute the administration should go to the county treasurer, but the question is presented whether or not the treaty between the United States and Italy supersedes the state law, and whether or not the treaty authorizes and empowers the consul general to administer upon the estates of Italian subjects dying within the jurisdiction of his consulate. The rights of the consul general of Italy were under consideration in this court and discussed in Re Tartaglio's Estate, 12 Misc. Rep. 245, 33 N. Y. Supp. 1121, and it was there held that the distributive shares in the estate of an Italian subject belonging to next of kin resident in Italy were payable to the consul general, and a decree was made directing the county treasurer, with whom the distributive shares had been deposited, to make such payment. There can be no question that state statutes must give way, in so far as they are not in accord with the obligations of the federal government under its treaties with foreign nations; and they must be construed, and the procedure of local courts must be made to conform, as nearly as practicable, to the treaty obligations of the federal government. Treaty provisions are to be construed with much more liberality than legislative enactments. Terms and words used in the former are to be given the broadest meaning in order to effectuate the liberal intentions of the high contracting parties. Due regard must be had to difference in languages, nice

distinctions must be avoided, and the great purpose of convenient international intercourse must be borne in mind. It has been said that a foreign consul, without specific authority, has the general right to protect the rights and property of a person of his nation within the jurisdiction of his consulate (The Bello Corrunes, 6 Wheat. 168, 5 L. Ed. 229), and that foreign consuls have power to administer upon the estates of their fellow subjects deceased within their territorial consulate. Wheat. Int. Law (2d Ed.) 151, and Wools. Int. Law, § 96. While there may be this inherent power, a fair construction of the treaty with Italy gives to the consul general specifically the power claimed. Article 22 of the commercial treaty of 1871 provides that:

"The citizens of each of the contracting parties shall have power to dispose of their personal goods within the jurisdiction of the other, by a sale, donation, testament or otherwise, and the representatives, being citizens of the other party, shall succeed to their personal goods, whether by testament or ab intestato, and they may take possession thereof, either by themselves or others acting for them, and dispose of the same at their will, paying such dues only as the inhabitants of the country wherein said goods are shall be subject to pay in like cases."

Articles 9, 16, and 17 of the consular treaty of 1878 provide:

"Art. 9. Consuls general, consuls, vice-consuls and consular agents may have recourse to the authorities of the respective countries within their district, whether federal or local, judicial or executive, for the purpose of complaining of any infraction of the treaties or conventions existing between the United States and Italy, as also in order to defend the rights and interests of their countrymen."

"Art. 16. In case of the death of a citizen of the United States in Italy, or of an Italian citizen in the United States, who has no known heir or testamentary executor designated by him, the competent local authorities shall give notice of the fact to the consuls or consular agents of the nation to which the deceased belongs, to the end that information may be at once transmitted to the parties interested.

"Art. 17. The respective consuls general, consuls, vice-consuls and consular agents, as likewise the consular chancellors, secretaries, clerks or attachés, shall enjoy in both countries all the rights, prerogatives, immunities and privileges which are or may hereafter be granted to the officers of the same grade of the most favored nation."

This provision giving to the Italian consuls general all the rights, prerogatives, and privileges of officers of the same grade of other more favored nations means more favored in respect of the particular matter in regard to which a question may arise, and is not to be made applicable only in cases where a treaty, taken as a whole, is more favorable. Now, upon examining the treaties of the United States with foreign nations, we find the treaty of July 27, 1853, with the Argentine republic, and in that this provision:

"Art. 9. If any citizen of the two contracting parties shall die without will or testament in any of the territories of the other, the consul general or consul of the nation to which the deceased belonged, or the representative of such consul general or consul in his absence, shall have the right to intervene in the possession, administration and judicial liquidation of the estate of the deceased, conformably with the laws of the country, for the benefit of the creditors and legal heirs."

67 N.Y.S.—71

Considering carefully the language of this treaty, the Argentine republic would seem to be treated more liberally, and with more favor, and given greater specific rights, than the kingdom of Italy under its treaties. Therefore it follows that under this "most favored nation" clause we must give to the consul general of Italy the same powers and rights conferred upon the consul general of the Argentine republic. This leads to the conclusion that not only by inherent right, but by specific treaty provision, the consul general of Italy is entitled to administer in this case, and is preferred to the persons entitled under the state statutes. This administration, however, must be had as provided in the treaty of the Argentine republic, "conformably with the laws of the country for the benefit of creditors and legal heirs." While it probably is true that under inherent power, as well as under specific treaty provisions, a consul general could demand, sue for, and collect the assets of countrymen dying within his jurisdiction without the aid of the machinery of the surrogate's court, nevertheless, under article 9 of the Italian consular treaty, above cited, he has the right to come into the surrogate's court to defend his countrymen; and, having done so, he is entitled to our aid as contemplated by the treaty.

We are next brought to the question of security. While it is policy to give treaties the broadest and most liberal construction, and to extend to foreign subjects, through their respective representatives, all the facilities accorded to citizens, at the same time it cannot be argued that the United States intended to deprive any of its citizens of rights accorded to them under their local laws. That is to say, it cannot be said that the federal government intends to take away from citizen or resident creditors of a deceased alien the security which is provided for under state laws; and, therefore, the administration to be granted to the consul general can only be upon giving the bond provided for by state law, the penalty, however, to be double the amount of the debts due to resident creditors, or double the amount of the assets, in case the estate be insolvent. Upon satisfactory evidence, however, that the decedent here died without debts due resident creditors, letters of administration will issue without the giving of a bond.

Letters of administration granted.