---

(34 Misc. Rep. 31.)

In re LOGIORATO'S ESTATE.

(Surrogate's Court, New York County.    February, 1901.)

1. EXECUTORS AND ADMINISTRATORS—ALIEN DECEDENTS—PUBLIC ADMINISTRATOR—REFUSAL TO SERVE—CONSUL GENERAL—RIGHT TO LETTERS.

Code Civ. Proc. § 2660, provides that administration, in case of intestacy, must be granted to the relatives of the deceased entitled to succeed to his personal property who will accept the same; but if no relative or guardian of a minor relative will accept the same, and no creditor applies, letters may be granted to any other person or persons legally competent. *Held*, that where a citizen and subject of Italy died in New York, and all of his next of kin were residents of Italy, and the public administrator refused to act, the consul general of Italy was entitled to letters of administration on giving proper security.

**2. SAME—TREATY—LETTERS TO CONSUL GENERAL—SECURITY.**

Italy Consular Treaty 1878, art. .17, provides that consular officers of
such country shall enjoy all the rights, prerogatives, and privileges
granted to those of the same grade of the most favored nation.. Argen-
tine Republic Treaty July 27, 1853, art. 9, declares that, if any citizen
of either party dies intestate in either country, the consul general of the
nation to which he belonged shall have the right to intervene in the
possession and administration of his estate, conformably with the laws
of the country, for the benefit of the decedent's creditors and legal heirs.
*Held,* that the consul general of Italy was not entitled, under such treaties,
to administer the estate of a citizen of Italy who died in New York, and
whose relatives resided in Italy, as against the rights of the public ad-
ministrator, or without giving proper security, since the intervention of
the consul general must conform to the laws of the country, and hence is
subject to the statutory rights of the public administrator.

Application by the consul general of Italy for letters of adminis-
tration on the estate of Giuseppe Logiorato, sometimes known as
Joseph Gerrodo, deceased. Letters granted. Italy Consular Treaty
1878, art. 17, declares that consular officers of such country shall
enjoy all the rights, prerogatives, and privileges granted to those
of the same grade of the most favored nations.

D. Humphreys, for petitioner.

THOMAS, S. The decedent was at the time of his death a resi-
dent of this country. He died intestate, and left assets in this country
in a small amount. He was a citizen and subject of the kingdom
of Italy, and all of his next of kin are residents of Italy. He left
no next of kin residing in the state of New York, and it is alleged
in the petition that there are no creditors. The petitioner is the
consul general of the kingdom of Italy. The public administrator,
though duly cited, makes default. The petitioner asserts a right
to administration without giving any security, and in preference to
the public administrator, and bases his claim on the facts as to
treaty provisions in the treaties between the United States and Italy,
recited in the opinion of the learned surrogate of Westchester county
in the recent case of In re Fattosini, 33 Misc. Rep. 18, 67 N. Y. Supp.
1119, and on the rule asserted in that decision. The application
will be granted on the ground that no relative, or guardian of a
minor relative, and no creditor or public administrator, will con-
sent to become administrator, and the petitioner is a legally com-
petent person to act as such (Code Civ. Proc. § 2660); but I am un-
willing to base my conclusion on the reasoning of the case cited or
to adopt it as a precedent. I agree that a solemn treaty of the
United States with Italy is of binding force, and that it must con-
trol all courts, even to the extent of ousting them of jurisdiction or
of changing the rules of their procedure, but in order to accomplish
this result their meaning and purpose must be clear and explicit.
Conceding that, under the "most favored nation" clause in the pro-
vision of the treaty with Italy relating to the rights, prerogatives,
immunities, and privileges of consuls general, the stipulation con-
tained in the treaty of July 27, 1853 (10 Stat. 1009), with the Argen-
tine republic, becomes a part of the treaty with Italy, I do not find

in that stipulation any justification for the conclusion sought. It is in the following words:

"Art. 9. If any citizen of the two contracting parties shall die without will or testament in any of the territories of the other, the consul-general or consul of the nation to which the deceased belonged, or the representative of such consul-general or consul in his absence, shall have the right to intervene in the possession, administration and judicial liquidation of the estate of the deceased, conformably with the laws of the country, for the benefit of the creditors and legal heirs."

It will be observed that the right assured to the consul general is to "intervene," and that this intervention is to be "conformably with the laws of the country." To intervene is to "come between" (Webst. Dict.), and the right to intervene in a judicial proceeding is a right to be heard with others who may assert demands or defenses. It is not a right to take possession of the entire corpus of a fund which is the subject of the proceeding. A right to intervene "conformably with the laws" of the state of New York is something different from a right to set aside the laws of the state, and take from a person who, by those laws, is the officer intrusted with the administration of estates of persons domiciled here, and who leave no next of kin within the jurisdiction, the right and duty of administering their assets. And, when the laws of the state require an administrator to give a bond to be measured by the value of assets, nothing in the treaty provision grants to the consul an immunity from this requirement to be obtained merely by asserting, in substance, that he has no knowledge of the existence of any debts. The eminent text writers cited in the opinion of the learned surrogate do not intimate that the courts of civilized states, acting under general laws framed for the protection of foreigners equally with their own citizens, must grant administration, contrary to the terms of those laws, to consuls, under any circumstances whatever. Thus, in Wools. Int. Law, p. 154, the learned writer, in enumerating the duties of consuls, includes the power "of administering on the personal property left within their consular districts by deceased persons, when no legal representative is at hand, and when law or treaty permits, and thus of representing them, it may be, before the courts of the district." Consuls may accept administration, but no right to override local law is suggested. See, also, Wheat. Int. Law (3d Ed.) 167, 168. A similar question was passed upon by the supreme court of Louisiana in 1854, in Succession of Thompson, 9 La. Ann. 96. In that case administration was granted to the official curator, under the laws of Louisiana, of a decedent domiciled in the state, and leaving property within the jurisdiction of the court. The petitioner was the vice consul of the kingdom of Sweden and Norway, who represented that the deceased was a Swede by birth, and at the time of his death was a subject of the king of Sweden. On this ground he claimed the right, in his capacity of consul, to take the succession out of the hands of the defendant, who was the duly-appointed administrator. This right, he alleged, he was entitled to exercise under the laws of nations, the laws of the United States,

and by virtue of treaties entered into between the United States and the kingdoms of Sweden and Norway. The court said:

"The right claimed is incompatible with the sovereignty of the state, whose jurisdiction extends over the property of foreigners as well as citizens found within its limits. The disposition of the estates of foreigners has been made the subject of special legislation, and no treaty or law of the United States exists which, as the paramount law, confers any such right as is claimed by the petitioner, nor are we aware of any principle of the law of nations which would entitle the petitioner to call in question the authority of our laws on that subject."

In Aspinwall v. Queen's Proctor, 2 Curt. 241, 244, an application was made in the English prerogative court of Canterbury by the American consul to take administration of the goods of an American subject domiciled in America, who died in itinere, leaving personal property in the jurisdiction of the court. The application was denied in the opinion of Sir Herbert Jenner on what appear to me to be satisfactory grounds. Among other things, he stated that the crown was the party to see that the property of any person dying within its dominions gets into proper hands. My conclusion, therefore, is that the petitioner may have letters on giving the usual security, but that this is done pursuant to our local law, and because the public administrator has refused to act.

Letters granted.