CHARLES F. WYMAN, petitioner.

JOHN W. McEVOY, public administrator, vs. CHARLES F. WYMAN.

Middlesex.   January 23, 1906. — March 10, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & SHELDON, JJ.

*Executor and Administrator.   Constitutional Law.   Treaty.   Russia.*

Under the existing treaties, which are the supreme law of the land, the petition of
the consular representative of the empire of Russia for this Commonwealth, to
be appointed administrator of the estate of a Russian subject who died here,
must be granted against the objection of the public administrator.

TWO APPEALS, from decrees of the Probate Court for the county of Middlesex.

Julius Saposnick, *alias* Sapoznik, *alias* Sapognick, died intestate in Cambridge in the county of Middlesex, on July 9, 1902, leaving personal property to be administered upon in that county. He was a citizen and subject of the empire of Russia and left in the United States no widow, heirs at law or next of kin; but left in Vilna, Russia, a widow and three minor children.

Charles F. Wyman of Cambridge is vice-consul of the empire of Russia at Boston, Massachusetts, and the consular representative of that empire for the Commonwealth of Massachusetts. On May 12, 1903, as such vice-consul he filed a petition to be appointed administrator of the estate of Julius Sapoznick, above named, claiming the right to administer the estate under the treaty between the United States and the empire of Russia.

On May 27, 1903, John W. McEvoy, public administrator for the county of Middlesex, filed a petition to be appointed administrator of the estate of the same man.

In the Probate Court *McIntire*, J. dismissed the petition of the Russian vice-consul, stating in his decree, " it not appearing that he has a legal right to be appointed administrator of the said estate to the exclusion of a public administrator." On the same day he allowed the petition of the public administrator, and decreed that letters of administration on the estate should be granted to him.

Charles F. Wyman, the Russian vice-consul, appealed from both decrees.

The cases came on to be heard before *Knowlton*, C. J., who by agreement of the parties reserved them upon the pleadings and an agreed statement of facts for determination by the full court, such entries to be made as law and justice might require.

*F. R. Coudert*, (of New York,) (*J. H. Appleton* with him,) for the petitioner.

*F. T. Field*, Assistant Attorney General, for the public administrator.

LATHROP, J. On the agreed facts in this case we have no doubt that the judge of the Probate Court erred in appointing a public administrator as administrator of the estate of a Russian subject dying here intestate and leaving personal property, and in dismissing the petition of the Russian vice-consul on the ground that it did not appear that he had a legal right to be appointed administrator of the estate to the exclusion of the public administrator.

By article 8 of the treaty of 1832, between Russia and the United States, it is provided: " The two contracting parties shall have the liberty of having in their respective ports consuls, vice-consuls, agents, and commissaries, of their own appointment, who shall enjoy the same privileges and powers as those of the most favored nations." The same treaty in article 10 provides: " The citizens and subjects of each of the high contracting parties shall have power to dispose of their personal goods within the jurisdiction of the other, by testament, donation, or otherwise, and their representatives, being citizens or subjects of the other party, shall succeed to their said personal goods, whether by testament or *ab intestato*, and may take possession thereof, either by themselves, or by others acting for them, and dispose of the same at will, paying to the profit of the respective governments such dues only as the inhabitants of the country wherein the said goods are shall be subject to pay in like cases."

Under the most favored nation clause reliance is had upon the provisions of article 9 of the treaty of 1853 between the Argentine Republic and the United States, which read as follows: " If any citizen of either of the two contracting parties shall die without will or testament, in any of the territories of the other, the

consul-general or consul of the nation to which the deceased belonged, or the representative of such consul-general or consul, in his absence, shall have the right to intervene in the possession, administration and judicial liquidation of the estate of the deceased, conformably with the laws of the country, for the benefit of the creditors and legal heirs." See also the treaty between Costa Rica and the United States of 1851, article 8.

There is but little authority directly in point, on the question raised by this appeal. In *Lanfear* v. *Ritchie*, 9 La. Ann. 96, decided in 1854, the decision was against the vice-consul of Sweden and Norway, on the ground that the right claimed was "incompatible with the sovereignty of the State." But this was at a time when we might expect the doctrine of State rights to be strongly insisted upon. On the other hand, there are two decisions in the Surrogate's Court for Westchester County, New York, which fully sustain the position of the vice-consul in the case before us. These cases are well considered and cover the entire ground. *Estate of Tartaglio*, 12 Misc. (N. Y.) 245. *In re Fattosini*, 33 Misc. (N. Y.) 18.

None of these cases is binding upon us, and the case must be decided on general principles.

Among the powers conferred upon the President by art. 2, § 2, of the Constitution of the United States is this: "He shall have power, by and with the advice and consent of the Senate, to make treaties, provided two-thirds of the senators present concur."

By art. 6 it is declared: "This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every State shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding."

Treaties are to be liberally construed. *Shanks* v. *Dupont*, 3 Pet. 242, 249. *Hauenstein* v. *Lynham*, 100 U. S. 483, 487. When, then, anything in the Constitution or laws of a State are in conflict with a treaty, the latter must prevail, and this court has not hesitated to follow this rule, which is generally recognized as the law of the land. *Tellefsen* v. *Fee*, 168 Mass. 188.

*Ware* v. *Hylton,* 3 Dallas, 199, 237. *United States* v. *Forty-three Gallons of Whiskey,* 93 U. S. 188, 197. *Hauenstein* v. *Lynham,* 100 U. S. 483, 489. *Head Money cases,* 112 U. S. 580, 598, per Miller, J. *Geofroy* v. *Riggs,* 133 U. S. 258, 267. *In re Parrott,* 1 Fed. Rep. 481.

While it may be true that there is some limit to the powers of the President and Senate in making treaties, as has been intimated in some of the cases in the Supreme Court of the United States, we cannot accede to the contention of the counsel of the public administrator, that the treaties in question in this case are beyond the jurisdiction of the treaty making power ; nor can we accede to the further contention as to the construction of the treaty which was adopted by the judge of the Probate Court.

We might perhaps stop here, but as the question of giving a bond is sure to arise, we are of opinion that the vice-consul, as he has applied for letters of administration, and thus has submitted himself to the court, should be required to give a bond, and in other respects to conduct himself with respect to the estate as would any other administrator.

The order therefore will be

*Decrees of the Probate Court reversed.*