# Carpigiani *v*. Hall, *et al.*

### Petition to Revoke Letters of A'dministration.

(Decided April 11, 1911. Rehearing denied May 5, 1911.
55 South. 248.)

1. *Executors and Administrators; Premature Appointment; Revocation.*—When a grant of administration to a friend and a relative was made within forty days after the death of the intestate, and the intestate's father survived him, the grant was premature; under such circumstances the court would be authorized ex mero motu to revoke the grant, and upon timely application of one interested, it is the duty of the court to do so.

2. *Same; Persons Entitled; Non Residence.*—The fact that the intestate's father was a non resident did not disqualify him for the office of administrator if he chose to undertake it

3. *Same; Consuls; Powers and Duties.*—The duty, and by comity, the authority of a consul to receive and care for the personal estate of a citizen of his own country who may die within his consulate, and to protect the estate from spoilation is prescribed and recognized by all civilized nations.

4. *Same; Right of Consul; Removal.*—Independent of any treaty provision a consular agent has the right to be heard on his petition to procure the removal of administrators claimed to be aspiring to spoil the estate, or at least improvidently appointed; and this prerogative attaches by law to his consular office without special authority from those entitled to the estate.

5. *Same; Treaty Provision.*—Treaty of May 8, 1878, between Italy and the United States, and the treaty of July 27, 1853, between the Argentine Republic and the United States examined, and it is held that article 17, of our treaty with Italy is to be read as if it conferred in specific terms all of the consular powers and privileges set out in article 9, of our treaty with the Argentine Republic.

6. *Same; Rights of Consul.*—Under article 6, Constitution of the United States, the consular prerogative of intervention in and administration of the estates of deceased foreign residents as granted in article 9, of the Argentine treaty of July 27, 1853, is international in its character and directly within the purview of the treaty power of the Federal Government, and is, therefore, binding upon all the courts of the state; hence, the Italian consul within his consular territory, is entitled, under the most favored nation clause of the treaty with Italy, to administer conformably with the statutes of the state, upon the estate of any Italian subject who there dies intestate.

7. *Ambassadors and Consuls; Rights and Privileges.*—The rights and privileges of consuls rests on the general law of nations as well as on treaty stipulations.

8. *Courts; Decisions Controlling; Constitutional Question.*—The Supreme Court of the United States is the supreme arbiter in all matters of constitutional interpretation.

APPEAL from Jefferson Probate Court.

Heard before Hon. S. E. GREENE.

Petition by Frank Carpigiani as consular agent for the removal of E. D. Hall and another as administrators of the estate of Francesco Santangelo, deceased, and for the appointment of petitioner in their stead. From a decree sustaining demurrers to the petition, petitioner appeals. Reversed and remanded.

JAMES A. MITCHELL, and S. B. STERN, for appellant. A treaty is a supreme law of the land binding all courts, both state and federal.—Article 6, Const. U. S.; *In re Wyman,* 114 Am. St. Rep. 601; *Succession of Rabase,* 49 Am. S. Rep. 433; *Tallafsen v. Fee,* 60 Am. S. Rep. 379. Under these authorities, and article 17 of the treaty of United States with Italy, the Italian consul at Birmingham was entitled to letters of administration. See also in this connection 108 Pac. 518; 33 N. Y. Supp. 1121; 67 Id. 1119; 77 Id. 1040. Irrespective of treaty rights, the general principles of international law governs and petitioner was entitled to the relief prayed thereunder.—Wheaton International Law, 151; Woolsey's Internat. Law, sec. 96; 7 Moore's Dig. of Internat. Law, 117. At least petitioner had a right to

have the letters revoked.—108 Pac. 516. As to the right of a person interested, to have letters revoked where they were improvidently granted, or where they were procured by misrepresentation, and fraud.—*Curtis v. Williams*, 33 Ala. 570; *Koger v. Franklin*, 79 Ala. 503; *Watson v. Glover*, 77 Ala. 323.

GEORGE HUDDLESTON, for appellee. The cause should be affirmed on the authority of *Rocca v. Thompson*, 108 Pac. 516, and *In re Wyman*, 114 A. S. R. 601. Counsel discuss authorities cited by appellant, and insist that they are either without application or that they are from courts of first instance, and not to be regarded as authorities.

SOMERVILLE, J.—Francesco Santangelo, a citizen of Italy, died intestate on or about March 30, 1910, in Jefferson county, Ala., where he was then residing, leaving personal property valued at about $50, and contingently a right of action in his personal representative against a corporation for the injuries that caused his death. On April 15, 1910, a petition was filed in the probate court by E. D. Hall and Virga Giuseppe, as *friend and relative* of the deceased, which, in addition to the usual jurisdictional averments, recited that the names of the heirs and distributees of the decedent's estate, so far as known, are "Virga Giuseppe, cousin and nearest relative in America." On the same day—April 15th—letters of administration were issued to these two petitioners jointly; they having qualified by filing the required bond. On April 19, 1910, Frank Carpigiani filed his petition in the probate court stating under oath that he is the consular agent of Italy at Birmingham, Ala., and as such empowered to look after the estates of Italian subjects who die intestate in Jefferson county; that Francesco Santangelo was a subject of

19—172.

the Kingdom of Italy at the time of his death, which occurred on or about March 30, 1910, and less than 40 days prior to the filing of this petition; that deceased left no wife or children, but is survived by his father and mother, who reside at Salarparuta, Italy; that the petition of E. D. Hall and Virga Giuseppe (a copy of which is made an exhibit) was not for the benefit of the estate or heirs of the deceased, but was for the fraudulent purpose of appropriating the funds of the estate to their own use, in furtherance of which scheme Virga Giuseppe had falsely and fraudulently represented himself to be a relative of the deceased, when in fact he was in no way related to him. The prayer of the petition is that Hall and Giuseppe be cited to appear and show cause why they should not be removed from the administration and their letters revoked; and that upon such hearing they be removed and their letters revoked; and that the petitioner, Carpigiani, be appointed as administrator in their stead. Citations were issued as prayed for, in response to which Giuseppe filed a sworn answer confessing the fraud and falsehood charged in the petition, renouncing his claim, and consenting that an order be made removing himself and Hall, and revoking their letters. Hall interposed a demurrer to the petition on the ground that it did not show that the petitioner was in any way interested in the estate, nor that he had any lawful authority to represent any of the persons in interest, nor that he had any standing to maintain the petition, and because no sufficient reason was shown for the revocation of the letters issued, nor for the removal of the administration. The probate court sustained the demurrer, and denied the petition, from which decree the petitioner, Carpigiani, appeals to this court.

[Carpigiani v. Hall, et al.]

1. The grant of administration having been made before the lapse of 40 days, and it appearing that the intestate's father survived him, the grant was premature and improvident; and the court would have been authorized *ex mero motu* to revoke the grant. And, upon the timely application of any person having a prior right to administration, it was the duty of the court to do so.—*Koger v. Franklin*, 79 Ala. 505; *Markland v. Albes*, 81 Ala. 433, 2 South. 123.

The fact that the intestate's father was a nonresident did not disqualify him for the office of administrator, if he chose to undertake it.—*Fulgham v. Fulgham*, 119 Ala. 403, 24 South. 851.

2. The rights and privileges of consuls rest on the general law of nations, as well as on treaty stipulations.—2 Opinions of Attys. Gen. U. S. 378. In his treatise on Public International Law (page 356), Mr. Taylor states that one of the duties attaching to the consular office is "to see that the laws of the state in which he officiates are properly administered when the rights of such (his) fellow citizens are involved."

The duty, and by comity the authority, of a consul to receive and care for the personal estate of citizens of his own country who may die within his consulate, and to protect the estate from spoliation, is prescribed and recognized by all civilized nations.—7 Moore's Digest International Law, § 722, p. 117; *The Bello Corrunes*, 6 Wheat. 152, 5 L. Ed. 229; Wheat. Int. Law (2d Ed.) 151; Woolsey's Int. Law, § 96. Of the general propriety of such a practice there can be no possible doubt, and we are of the opinion that the appellant's intervention on the grounds set forth in his petition was no more than his official duty prescribed, and was authorized by the. law and comity of nations.

[Carpigiani v. Hall, et al.]

We mean to say only that he had a right to be heard on his petition, independently of treaty provisions, for the purpose of procuring the removal of these administrators if shown to be dishonestly conspiring to despoil the estate, or if they were improvidently appointed; and that this prerogative attaches by law to his consular office, without any special authority from those who are entitled to the estate.

3.   The treaty of 1878 between Italy and the United States, of which we take judicial notice, contains the following provisions:

Article 9.   "Consuls general, consuls, vice consuls and consular agents may have recourse to the authorities of the respective countries within their district, whether federal or local, judicial or executive, for the purpose of complaining of any infraction of the treaties or conventions existing between the United States and Italy as also in order to defend the rights and interests of their countrymen.   If the complaint should not be satisfactorily redressed, the consular officers aforesaid in the absence of a diplomatic agent of their country, may apply directly to the government of the country where they reside."

Article 16.   "In the case of the death of a citizen of the United States in Italy, or of an Italian citizen in the United States, who has no known heir, or testamentary executor designated by him, the competent local authorities shall give notice of the fact to consuls or consular agents of the nation to which the deceased belongs, to the end that information may be at once transmitted to the parties interested."

Article 17.   "The respective consuls general, vice consuls and consular agents, as likewise the consular chancellors, secretaries, clerks or attaches, shall enjoy in both countries all the rights, prerogatives, immuni-

ties and privileges which are or may hereafter be granted to the officers of the same grade of the most favored nation."—20 Stat. 728, 732; U. S. Treaties 1904, p. 457.

Under the "most favored nation" clause in the above treaty, appellant makes reference to article 9 of the treaty of 1853 between the Argentine Republic and the United States: "If any citizen of either of the two contracting parties shall die without will or testament, in any of the territories of the other, the consul general or consul of the nation to which the deceased belonged, or the representative of said consul general or consul, in his absence, shall have the right to intervene in the possession, administration and judicial liquidation of the estate of the deceased, conformably with the laws of the country, for the benefit of the creditors and legal heirs."—10 Stat. 1009; U. S. Treaties 1904, p. 24.

It thus results that article 17 of our treaty with Italy is to be read as if it conferred in specific terms all of the consular powers and privileges set out in article 9 of the Argentine treaty.

Article 6 of the Constitution of the United States declares: "This Constitution, and the laws of the United States which shall be made in pursuance thereof, and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby; anything in the Constitution or laws of any state to the contrary notwithstanding."

The final arbiter in all matters of constitutional interpretation is, of course, the Supreme Court of the United States, and that court, by Justice Field, has said of this provision: "That the treaty power of the United States extends to all proper subjects of negotiation between our government and the governments of

other nations is clear. It is also clear that the protection which should be afforded to the citizens of one country owning property in another, and the manner in which that property may be transferred, devised, or inherited, are fitting subjects for such negotiation, and of regulation by mutual stipulations between the two countries. As commercial intercourse increases between different countries, the residence of citizens of one country within the territory of the other naturally follows, and the removal of their disability from alienage to hold, transfer, and inherit property in such cases tends to promote amicable relations. Such removal has been within the present century the frequent subject of treaty arrangement. The treaty power, as expressed in the Constitution, is in terms unlimited except by those restraints which are found in that instrument against the action of the government or its departments, and those arising from the nature of the government itself and of that of the states."—*Geofroy v. Riggs*, 133 U. S. 258, 266, 10 Sup. Ct. 295, 33 L. Ed. 642.

Undoubtedly, the consular prerogative of intervention in and administration of the estates of deceased foreign residents, as granted in article 9 of the Argentine treaty, is international in its character, and directly within the purview of the treaty power of the federal government, and is therefore binding upon all the courts of this state. We therefore hold that the Italian consul, within the area of his consular territory, is entitled by supreme law to administer upon the estate of any Italian subject who there dies intestate, conformably, as to his general powers, obligations, and mode of procedure, with the statutes of the state.

These conclusions are fully and directly supported by the decisions of New York and Massachusetts.— *Estate of Tartaglio*, 12 Misc. Rep. 245, 33 N. Y. Supp.

1121; *In re Fattosini*, 33 Misc. Rep. 18, 67 N. Y. Supp. 1119; *Wyman, Petitioner*, 191 Mass. 276, 77 N. E. 379, 114 Am. St. Rep. 601.

The case of *In re Ghio's Estate* (*Rocca v. Thompson* [Cal.]) 108 Pac. 516, takes an opposing view, which must be regarded as erroneous.

The decree of the probate court is reversed, and the cause remanded for further proceedings in accordance with the foregoing opinion.

Reversed and remanded.

SIMPSON, MCCLELLAN, and MAYFIELD, JJ., concur.