In the Matter of the Estate of CARMINE D'ADAMO,
Deceased.

GIOVANNI D'ADAMO, Appellant; GERMANO P. BACCELLI,
as Administrator of the Estate of CARMINE D'ADAMO,
Deceased, Respondent.

Executors and administrators — estate of citizen of Italy dying
intestate within this state — when Italian consul not entitled to
letters of administration in preference to brother of intestate,
although latter has no interest in estate — construction and effect
of treaties relating thereto.

1. Where a subject of the kingdom of Italy died, intestate, in
this state leaving a wife, a child, a father and a mother who reside
in Italy, and a brother who resides in this state, the latter, although
he had no interest in decedent's estate, was entitled, under section
2660 of the Code of Civil Procedure as it stood in 1913, to letters of
administration thereon, and letters previously issued to the Italian
consul should, upon the petition of decedent's brother, have been
revoked and the brother appointed administrator in his stead.

2. It is contended that a treaty provision confers on the Italian
consul a right to letters of administration superior to that of dece-
dent's brother, because the consular convention of 1878 between the
United States and Italy provides that the consular officers and
representatives of the kingdom of Italy shall have "all the rights
* * * and privileges which are or may hereafter be granted to
the officers of the same grade of the most favored nation;" that the
consular convention of 1911 between the United States and Sweden
confers upon the consuls of Sweden the exclusive right to admin-
ister upon the estates of their citizens dying in the United States,
and, hence, that under the most favored nation clause of the Italian
convention a like privilege must be held to be enjoyed by the con-
sular representative of Italy. The convention between the United
States and Sweden provides that if a citizen of either country
dies in the territory of the other, without having in the country of
his decease any known heirs or testamentary executors by him
appointed, the consular officers of the nation to which the deceased
may belong shall "so far as the laws of each country will permit
and pending the appointment of an administrator * * * take
charge of the property left by the deceased for the benefit of his
lawful heirs and creditors and, moreover, have the right to be

appointed as administrator of such estate." *Held*, that this provision is to be construed as adding such foreign consuls to the list of those eligible as administrators so as to enable them to administer upon the estates of their fellow-citizens when no one having a prior right under the local law is competent or willing to act; that it is not intended by this provision to supersede the local law and confer a right of administration upon the foreign consul that is exclusive and paramount to all others; and that, therefore, the right of the Italian consul to letters of administration in this case is not superior to that of decedent's brother. (*Rocca* v. *Thompson*, 223 U. S. 317, cited and considered.)

*Matter of D'Adamo*, 159 App. Div. 40, reversed.

(Argued June 8, 1914; decided July 14, 1914.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered November 12, 1913, which affirmed an order of the Jefferson County Surrogate's Court denying a petition for the revocation of letters of administration.

The facts, so far as material, are stated in the opinion.

*Gilbert S. Woolworth* for appellant. By the provisions of New York law the petitioners D'Adamo and Fred W. Mayhew are entitled to letters of administration. (Code Civ. Pro. §§ 2660, 2661; *Lathrop* v. *Smith*, 24 N. Y. 417; *Matter of Wilson*, 92 Hun, 321; *Matter of Lowenstein's Estate*, 62 N. Y. Supp. 819; *Butler* v. *Perrott*, 1 Dem. 9; *Matter of Campbell*, 123 App. Div. 212; 192 N. Y. 312.) The Italian consul is not entitled to letters of administration under any provision of the laws of the state of New York. (Code Civ. Pro., § 2660.) The treaty with Italy does not entitle the Italian consul to letters of administration herein. (*Matter of Logiorato's Estate*, 69 N. Y. Supp. 507; *Lanfear* v. *Ritchie*, 9 La. Ann. 96; 5 Moore's Int. Law Digest, 122, 123; *Rocca* v. *Thompson*, 223 U. S. 317; U. S. R. S. § 1709; *Matter of Liss' Estate*, 139 N. W. Rep. 300.) The most favored nation clause in the treaty with Italy does not entitle the Italian consular

officers to demand whatever privileges may be accorded consular officers under the convention of March 20, 1911, between the United States and Sweden. (5 Moore's Dig. Int. Law, 257–319; *Whitney* v. *Robertson*, 124 U. S. 190; *Bertram* v. *Robertson*, 122 U. S. 116.)

*Thomas F. McDermott* for respondent. Neither appellant, as brother of intestate, nor Fred W. Mayhew, being "entitled to succeed to personal property" of intestate, was entitled to letters of administration; and the preliminary objections of the consul were properly sustained and their petition for the award of letters was properly denied. (*Campagne* v. *Hall*, 172 Ala. 287; *Lathrop* v. *Smith*, 24 N. Y. 417; *Matter of Patton*, 80 Misc. Rep. 482.) The most favored nation clause of the treaty with Italy entitled the Italian consul to be appointed administrator on the estates of Italian subjects dying intestate, that right being granted to the Swedish consul under the treaty of Sweden with the United States. (*Wyman* v. *McAvoy*, 191 Mass. 276; *Grandolfo* v. *Hartman*, 49 Fed. Rep. 181; *Matter of Parrott*, 1 Fed. Rep. 481; *Matter of Lobrasciano*, 38 Misc. Rep. 415; *Rocco* v. *Thompson*, 223 U. S. 317; *Matter of Baglieri*, 137 N. Y. Supp. 175; *Matter of Liss*, 120 Minn. 122; *Matter of Jarema*, 137 N. Y. Supp. 176; *Matter of Riccardo*, 79 Misc. Rep. 371; *Matter of Lombardi*, 78 Misc. Rep. 689.) The words in article XIV of the Swedish treaty, "so far as the laws of each country will permit," did not limit the right of consuls to be appointed as administrators. (*Matter of Baglieri*, 137 N. Y. Supp. 175; *Matter of Jarema*, 137 N. Y. Supp. 176; *Matter of Madolene*, 79 Misc. Rep. 653; *Matter of Riccardo*, 79 Misc. Rep. 371; *Matter of Lombardi*, 78 Misc. Rep. 689; *Matter of Ghio*, 157 Cal. 552; *Ex parte Anderson*, 184 Fed. Rep. 114; *Tucker* v. *Alexandroff*, 183 U. S. 424; *Shanks* v. *Dupont*, 3 Pet. 242; *Hauenstein* v. *Lynham*, 100 U. S. 483; *De Geofroy* v. *Riggs*, 133 U. S. 267.)

CARDOZO, J.    Carmine D'Adamo, a citizen and subject of the kingdom of Italy, died in this state in December, 1912.    His residence was in the town of Le Ray in the county of Jefferson.    He left a wife, a child, a father and a mother, who resided in Italy.    He left a brother, Giovanni, a resident of New York.    Letters of administration upon his estate were granted by the surrogate to the Italian consul.    Thereafter Giovanni D'Adamo and one Fred W. Mayhew, the treasurer of Jefferson county, joined in a petition that the letters granted to the Italian consul be revoked, and that the petitioners be appointed administrators in his stead.    This application was denied by the surrogate, and the order was affirmed at the Appellate Division.    The county treasurer has acquiesced in that decision.    The brother, Giovanni D'Adamo, alone appeals.

The case presents two questions: the one as to the interpretation of the statutes of our own state; the other as to the interpretation of treaties between the United States and foreign nations.    The first question is whether, under the Code of Civil Procedure as it stood in June, 1913, when the order under review was made, the brother of the dead man had the right of administration.    The second question is whether the treaty between the national government and Italy, construed in connection with a later convention with Sweden, has taken the right away.

(1) It is urged in support of the surrogate's decree that because the decedent's brother was not entitled to share in the estate, he was not entitled to administer upon it.    The decedent left a wife and an infant child in Italy.    His entire estate belongs to them.    They are not qualified to act as his administrators.    The brother, under the law as it stood when letters were refused to him, and as it stands to-day, is qualified to act, unless his lack of interest in the estate disqualifies him.    We think that it does not.

The law which was in force when this proceeding was

determined by the surrogate, and which will remain in force until September 1, 1914, was section 2660 of the Code of Civil Procedure, as amended by chapter 403 of the Laws of 1913. We think that the proper construction of that section is established by the case of *Lathrop* v. *Smith* (35 Barb. 64; 24 N. Y. 417). That case construed a section of the Revised Statutes (2 R. S. 74, section 27), which was later incorporated as section 2660 into the Code of Civil Procedure (L. 1893, ch. 686). Some slight verbal changes were made at that time in the process of revision. Whether these changes of form effected a change of meaning is a question in respect of which there has been a conflict of decision in the courts below. (*Matter of Wilson*, 92 Hun, 318; *Matter of Campbell*, 123 App. Div. 212; *Matter of Wolff*, 161 App. Div. 255; *Matter of Lowenstein*, 29 Misc. Rep. 722; *Matter of Seymour*, 33 Misc. Rep. 271; *Matter of Patten*, 80 Misc. Rep. 482.) We hold that the meaning remained the same, and that the case of *Lathrop* v. *Smith* (*supra*) is applicable to section 2660 of the Code as it was to the Revised Statutes. We content ourselves with stating our conclusion in this respect, because of amendments which have this year been adopted by the legislature. By chapter 443 of the Laws of 1914, which will take effect on September 1, 1914, section 2660 of the Code of Civil Procedure has become section 2588, and radical changes have been made in it. The result of these amendments will be to establish a new rule hereafter. Discussion of the reasons for our construction of the old rule would, therefore, serve no useful purpose. Confining ourselves to the statute as it read before the amendment of this year, we hold that unless a treaty stands in the way, the brother, Giovanni D'Adamo, is entitled to the grant of letters.

(2) This brings us to our second question: Is there any treaty provision that confers a prior right on the Italian consul? By article XVIII of the Consular Convention of 1878 between the United States and Italy,

" The respective Consuls General, Consuls, Vice-Consuls and the Consular Agents, as likewise the Consular Chancellors, Secretaries, Clerks or Attaches, shall enjoy in both countries, all the rights, prerogatives, immunities and privileges which are or may hereafter be granted to the officers of the same grade of the most favored nation." It is said by the Italian consul that the Consular Convention of 1911 between the United States and Sweden confers upon Swedish consuls the right to administer, to the exclusion of all other persons, upon the estates of their nationals dying in the United States, and it is insisted that under the most favored nation clause a like privilege must be held to be enjoyed by the representatives of Italy. We must, therefore, determine whether the convention with Sweden, properly construed, confers upon the representatives of that government the exclusive right asserted.

The extent to which our local law of administration has been displaced by foreign treaties has been, for some years, an unsettled question in this state. The representatives of Italy and of other nations at first based their pretensions upon article IX of the Argentine treaty of 1853, which gave to the consular officers of the respective countries the right " to intervene in the possession, administration and judicial liquidation of the estate of the deceased, conformably with the laws of the country, for the benefit of the creditors and legal heirs." The effect of that treaty was the subject of conflicting decisions, both by the Surrogates' Courts and the Appellate Division in this state, and by courts of other states. (*Matter of Logiorato*, 34 Misc. Rep. 31; *Matter of Fattosini*, 33 Misc. Rep. 18; *Matter of Lobrasciano*, 38 Misc. Rep. 415; *Matter of Scutella*, 145 App. Div. 156; *McEvoy* v. *Wyman*, 191 Mass. 276; *Matter of Ghio* [*Rocca* v. *Thompson*], 157 Cal. 552.) The question came before the Supreme Court of the United States in *Rocca* v. *Thompson* (223 U. S. 317). The Supreme Court of

California sustained the prior right of the public administrator, and refused to issue letters of administration to the Italian consul. (157 Cal. 552.) The Supreme Court of the United States upheld the refusal. In reaching that conclusion, the court left open the question whether the federal government could constitutionally, in the exercise of the treaty-making power, supplant the commonwealth laws regulating the administration of estates. (223 U. S. at p. 329.) Assuming such a power, the court held that "there was no purpose in the Argentine treaty to take away from the states the right of local administration provided by their laws, upon the estates of deceased citizens of a foreign country, and to commit the same to the consuls of such foreign nation, to the exclusion of those entitled to administer as provided by the local laws of the states within which such for·eigner resides and leaves property at the time of decease." (p. 334.) The court pointed out that the only privilege conferred was one of intervention and that by this was meant the right "to enter into a proceeding already begun, rather than the right to take and administer the property." In developing this argument Mr. Justice DAY, who spoke for the court, said: "Had it been the intention to commit the administration of estates of citizens of one country, dying in another, exclusively to the consul of the foreign nation, it would have been very easy to have declared that purpose in unmistakable terms;" and 'he cited as instances of such a purpose a treaty with Peru, made in August, 1887 (25 Stat. at Large, 1444, art. 33), but terminated in November, 1899, and a convention with Sweden proclaimed in March, 1911, after the decision by the courts of California of the case which he was then reviewing. These observations with reference to the effect of the convention with Sweden are plainly *obiter;* but they have been seized hold of as supporting the contention that since the adoption of that convention in March, 1911, the consuls of Sweden and hence the con-

suls of Italy have the exclusive right to administer upon the estates of their respective citizens dying in the United States. It has been so held by the Appellate Division in this case and by the Surrogates' Courts in other cases. (*Matter of Baglieri,* 137 N. Y. Supp. 175; *Matter of Lombardi,* 78 Misc. Rep. 689; *Matter of Riccardo,* 79 Misc. Rep. 371; *Matter of Madaloni,* 79 Misc. Rep. 653.) The contrary has been held in a well-considered opinion by the Supreme Court of Minnesota. (*Austro-Hungarian Consul* v. *Westphal,* 120 Minn. 122, 139, 141.)

The language of the treaty which is said to have brought about this sweeping change must be kept before us. It is as follows (Convention between United States and Sweden, 1911, article XIV):

"In case of the death of any citizen of Sweden in the United States or of any citizen of the United States in the Kingdom of Sweden without having in the country of his decease any known heirs or testamentary executors by him appointed, the competent local authorities shall at once inform the nearest consular officer of the nation to which the deceased belongs of the circumstances, in order that the necessary information may be immediately forwarded to parties interested.

"In the event of any citizens of either of the two Contracting Parties dying without will or testament, in the territory of the other Contracting Party, the consul-general, consul, vice-consul-general, or vice-consul of the nation to which the deceased may belong, or, in his absence, the representative of such consul-general, consul, vice-consul-general, or vice-consul, shall, so far as the laws of each country will permit and pending the appointment of an administrator and until letters of administration have been granted, take charge of the property left by the deceased for the benefit of his lawful heirs and creditors, and, moreover, have the right to be appointed as administrator of such estate.

"It is understood that when, under the provisions of

this article, any consul-general, consul, vice-consul-general, or vice-consul, or the representative of each or either, is acting as executor or administrator of the estate of one of his deceased nationals, said officer or his representative shall, in all matters connected with, relating to, or growing out of the settlement of such estates, be in such capacities as fully subject to the jurisdiction of the courts of the country wherein the estate is situated as if said officer or representative were a citizen of that country and possessed of no representative capacity whatsoever."

The concluding words of the second paragraph of this article, " and, moreover, have the right to be appointed as administrator of such estate," are said to be adequate, not merely to make the foreign consul eligible for appointment, or to confer a right to administer where no one else has a better right, but to supersede the local law and to confer a right of administration that is paramount and exclusive. To determine whether that is a sound interpretation of the convention we must read its language in the light of those international usages which define the functions of consuls; in the light of the respective fields of state and of federal jurisdiction as disclosed in our diplomatic history; and in the light of the consequences to follow if the local laws are to be thus supplanted.

Considering, first of all, the mere words of the treaty, aside from extrinsic tokens of the purpose of the contracting parties, we find no expression of an intent that the consul's right to be administrator shall be exclusive, or that it shall supersede prior rights conferred by local law. " So far as the laws of each country will permit," the consul shall have the right, until letters of administration are granted, to take charge of the property of the deceased for the benefit of lawful heirs and creditors. Plainly this right is subordinate to the authority of the states. But the words " so far as the laws of each country will permit " may fairly be construed as qualifying

the whole sentence. The consul is not merely to have the right of temporary intervention, he is to have "moreover" the right, in case of need, to be appointed administrator. But both rights — the right of temporary intervention and the right of permanent administration granted in addition — are to be exercised only "so far as the laws of each country will permit." It is incredible that our government intended that the right of temporary custody for the purpose of preservation should be conditioned by the local laws, and that the larger right of permanent administration should be unconditional and absolute. Full effect is given to the language of the treaty if we construe it as adding the foreign consuls to the list of those eligible as administrators so as to enable them to administer upon the estates of their fellow-citizens when no one having a prior right under the local law is competent or willing to act.

This construction is confirmed when we consider that it harmonizes the function of consuls under the treaty with the function of consuls under established international practice. What that practice is has been stated in decisions and confirmed in declaratory statutes and regulations. The function of consuls is to preserve derelict estates. When their countrymen die in foreign lands it is their duty to step in and guard the stranded property from waste. This right belongs to them, irrespective of express statute or treaty, by virtue of their office. (*Rocco* v. *Thompson*, 223 U. S. 317, 331; *Carpigiani* v. *Hall*, 172 Ala. 287; *The Bello Corrunes*, 6 Wheat. 168; *Aspinwall* v. *The Queen's Proctor*, 2 Curt. Eccl. R. 241; *Ferrie* v. *Public Administrator*, 3 Bradf. 249; *Seidel* v. *Peschkaw*, 27 N. J. L. 427; *Lanfear* v. *Ritchie*, 9 La. Ann. 96; *Matter of Fattosini*, 33 Misc. Rep. 18; 5 Moore's Digest of Int. Law, pp. 117, 118; and, particularly, Letter of Mr. Clay, Secretary of State, to the British Minister, Nov. 12, 1827, and Letter of Mr. Marcy, Secretary of State, to Mr. Aspinwall, Aug. 21, 1855, there cited.) The

custody thus acquired is, however, provisional. It yields to the superior right of legally constituted representatives. If there are such representatives, a consul's function is limited to one of co-operation and intervention. If there are no such representatives, it is his duty, so far as he is able, to administer the estate to the extent of gathering it in and transmitting it to the jurisdiction of the domicile. This much he should do, though the title of administrator be withheld from him. If the title were to be given him, its purpose presumably would be rather to authenticate his powers than to enlarge the occasion for their exercise.

The functions thus defined by usage have been confirmed by statute and regulations declaratory of the existing practice. By section 1709 of the United States Revised Statutes it is provided:

"It shall be the duty of consuls and vice-consuls, where the laws of the country permit:

"*First.* To take possession of the personal estate left by any citizen of the United States, other than seamen belonging to any vessel, who shall die within their consulate, leaving there no legal representative, partner in trade, or trustee by him appointed to take care of his effects.

"*Second.* To inventory the same with the assistance of two merchants of the United States, or, for want of them, of any others at their choice.

"*Third.* To collect the debts due the deceased in the country where he died, and pay the debts due from his estate which he shall have there contracted.

"*Fourth.* To sell at auction, after reasonable public notice, such part of the estate as shall be of a perishable nature, and such further part, if any, as shall be necessary for the payment of his debts, and, at the expiration of one year from his decease, the residue.

"*Fifth.* To transmit the balance of the estate to the Treasurer of the United States, to be holden in trust for

the legal claimant; except that if any time before such transmission the legal representative of the deceased shall appear and demand his effects in their hands, they shall deliver them up, being paid their fees, and shall cease their proceedings."

The Consular Regulations of 1896 (section 409) provide as follows: "A consular officer is by the law of nations and by statute the provisional conservator of the property within his district belonging to his countrymen deceased therein. He has no right, as a consular officer, apart from the provisions of treaty, local law, or usage, to administer on the estate, or in that character to aid any other person in so administering it, without judicial authorization. His duties are restricted to guarding and collecting the effects, and to transmitting them, to be disposed of pursuant to the law of the decedent's state — 7 Op. Atty.-Gen. 274. It is, however, generally conceded that a consular officer may intervene by way of observing the proceedings, and that he may be present on the making of the inventory."

The convention with Sweden was intended to confirm the powers thus established by international comity, and to facilitate their exercise. Consuls are to have the right, where the estate is in peril, to intervene at once, and if other representatives are lacking, they are, moreover, to have the right to be appointed administrators themselves. They are to have this right, not to displace others competent under local law, but the better to fulfill their inherent function as provisional conservators. If there is no qualified relative within the jurisdiction and no one else to whom our law gives the right of administration, the consular representative under this treaty may come forward and demand the grant of letters. This view is in harmony with the English practice as established by 24 and 25 Vict. (c. 121, s. 4). It is in accord with the decision of the Supreme Court of Minnesota. (*Austro-Hungarian Consul* v. *Westphal, supra.*)

15

It is not inconsistent with a decision of the United States District Court for California, where the court, while holding the Swedish consul eligible as administrator, found it unnecessary to determine that all others were excluded. (*Matter of Holmberg's Estate*, 193 Fed. Rep. 260.) It makes the phrase " so far as the laws of each country will permit " equivalent to the phrase " conformably with the laws of the country," construed in *Rocca* v. *Thompson* (*supra*). And, finally, it maintains the continuity of the purpose, revealed repeatedly in conventions and treaties throughout our history, to subject the rights of consuls to the requirements of local law.

If the convention means more than this, if it was intended to confer upon foreign consuls an exclusive and paramount right, strange consequences must follow. It is not restricted in its operation to the estates of aliens who have died in the United States while temporarily sojourning here, but who have retained a domicile in their native lands. It applies equally to the estates of aliens who have their domicile in the United States. If an alien, settling in New York, were to build up a business, and, marrying, rear a family among us, the respondent would have us hold that his children, citizens of this state, would have to yield the right of administration to a foreign consul. In that view the consul is not merely eligible as administrator, but eligible to the exclusion of every one else, even the closest relatives of the dead man, and that, too, though the entire estate is located here, and is here to be distributed. We are unwilling to believe that such results were contemplated in concluding this convention. We hold it to be incredible that there has been attached to the consular office a right that exceeds so greatly the occasion and the needs of the consular function. Before adopting a construction that will bring these consequences to pass, we have a right to expect a far plainer manifestation of the will of the national

government than any that has been afforded by the language now before us.

The construction which we thus hold to be the true one, finds additional confirmation when we consider the respective fields of state and national legislation, and the refusal of the federal government, as disclosed in our diplomatic history, to trench upon the right of the states to administer the estates of those dying within their territorial limits. We are not required, for the decision of this case, to determine that the treaty-making power may not be so exercised as to qualify that right (*Lanfear* v. *Ritchie*, 9 La. Ann. 96; *Mager* v. *Grima*, 8 How. [U. S.] 490; *Frederickson* v. *Louisiana*, 23 How. [U. S.] 445; *Matter of Ghio's Estate*, 157 Cal. 552; *Austro-Hungarian Consul* v. *Westphal*, *supra*); and we express no opinion upon that subject. We find, however, that distinguished secretaries of state have disclaimed both the existence of such a power, and the intent to exercise it. Thus, in 1874, Mr. Fish in a letter to the Turkish minister, said: "The estates of decedents are administered upon and settled in the United States under the law of the state of which the decedent was a resident at the time of his death, and on this subject, in the absence of any treaty regulations on the subject, interference in the disposition of such measures as may be prescribed by the law of the particular state in such cases, is not within the province of the federal authorities." Again, in 1889, Mr. Bayard, in a letter to the American minister in Brazil, considered a decree of the Brazilian government establishing the principle of reciprocity with reference to the administration of the estates of deceased aliens by their consular representatives; and, criticizing the principle of the decree, he said (5 Moore's Digest of Int. Law, p. 120): "The Government of the United States has no power to establish by treaty, provisions such as the above, in relation to Brazilian subjects dying in any of

the States of our Union. Each State, under our system, has exclusive jurisdiction over the administration of property of persons, whether foreigners or citizens, dying within its limits. * * * I conclude, therefore, that the United States cannot agree to accept the Brazilian decree, above quoted, as the basis of a reciprocal arrangement with that country, first, because the federal government has no power to impose such regulations on the states, and secondly, because the provisions in question if correctly understood conflict with provisions which are settled rules of succession as established in all states." Again, in 1894, the Italian minister at Washington proposed that Italian consuls in the United States be authorized, as were the American consuls in Italy, to settle the estates of deceased countrymen. (5 Moore's Digest Int. Law, p. 122; *Rocca* v. *Thompson*, *supra*, at p. 333.) The department of state replied that in view of the fact that the administration of estates in the United States was under the control of the respective states, it was thought that the proposed international agreement should not be made. Other instances of the expression of a like policy are cited in the briefs of counsel. We call attention to these precedents not as disproving the power of the federal government, by virtue of its control over our international relations, to enlarge the functions of consuls in the administration of the estates of aliens, but rather as demonstrating the propriety of a construction of the treaty that will avoid the assumption of a power so frequently disclaimed. It is not to be lightly presumed that the government of the nation departed from the precedents of a century, and by an obscure clause in a long and involved article of this convention overturned its settled practice.

We think, therefore, that the convention with Sweden did not create an exclusive right, and that we ought not to treat the dictum in *Rocca* v. *Thompson* (*supra*) as a ruling to the contrary. That the learned justice who

spoke for the court in that case did not attempt to construe the convention with deliberation or finality may be gathered from the fact that he placed it on a par, for the purpose of his illustration, with a treaty then terminated, between the United States and Peru. (Treaty of August, 1887; 25 Stat. at Large, 1444, art. 33.) The latter treaty, however, was plainly not intended to give to consuls a right to administer to the exclusion of the rights of relatives. Its language is: "Until the conclusion of a consular convention, which the high contracting parties agree to form as soon as may be mutually convenient, it is stipulated that *in the absence of the legal heirs or representatives*, the consuls or vice-consuls of either party shall be *ex-officio* the executors or administrators of the citizens of their nation who may die within their consular jurisdictions, and of their countrymen dying at sea whose property may be brought within their district." The words which we have italicized demonstrate that even under that treaty there are times when the right of consuls to administer must give way to that of others. The description of the right as exclusive must be regarded as inadvertent.

There arose under an earlier treaty with Peru, similar to the one just quoted, a case which has been referred to in some opinions (see *e. g., Matter of Lobrasciano*, 38 Misc. Rep. 415, 421) as sustaining the exclusive rights of consuls under the treaty with Italy, but which, in our view, far from sustaining a position so extreme, is an apt illustration of the appropriate function of consuls in the administration of estates. The case is stated in Moore on International Arbitrations (Vol. 4, p. 4390). One Vergil, a citizen of Peru, while returning from New York to his native land, after a brief sojourn in the United States, died at sea. The captain of the vessel brought his personal effects back to New York and gave them to the public administrator. The Peruvian minister complained that this was a violation of the treaty

which was applicable by its express terms where his countrymen died at sea and their property was afterwards brought within our jurisdiction. An arbitration, under a convention between the two governments, followed, and the commissioners sustained the position of Peru. There is little analogy between such a case and the one at bar. Vergil had never resided in New York; did not die in New York; and did not leave any property in New York. His personal effects were brought back here after his death, though they ought to have been delivered to his representatives in Peru; and the attempt of the public administrator to retain them was viewed as an unlawful assumption of jurisdiction. (*Hoes* v. *N. Y., N. H. & H. R. R. Co.*, 173 N. Y. 435, 442; *Matter of McCabe*, 84 App. Div. 145; 177 N. Y. 584.) In such a situation the derelict property brought by chance within our own state, after the death of its owner on the high seas, should have been delivered to the Peruvian consul as the provisional conservator, to be by him transmitted to the jurisdiction of the domicile.

In some cases, as, for example, *Matter of Baglieri's Estate* (137 N. Y. Supp. 175), the right of the foreign consul has been based in part on a treaty between the United States and Paraguay, concluded February, 1859 (12 Stat. 1096). Article X of this treaty provides: "In the event of any citizen of either of the two contracting parties dying, without will or testament, in the territory of the other contracting party, the Consul-General, Consul or Vice-Consul, of the nation to which the deceased may belong, or, in his absence, the representative of such Consul-General, Consul or Vice-Consul, shall, so far as the laws of each country will permit, take charge of the property which the deceased may have left, for the benefit of his lawful heirs and creditors, until an executor or administrator be named by the said Consul-General, Consul or Vice-Consul, or his representative." It is perhaps a sufficient answer to say that this treaty was before

the Supreme Court when it decided *Rocca* v. *Thompson* (*supra*), and, though not mentioned in the opinion, must have been held unavailing to establish an exclusive right in favor of the Italian consul. The words " so far as the laws of each country will permit," as found in that treaty, must, in our judgment, be deemed to qualify the right of the consul-general to name an executor or administrator as well as his right of temporary custody. That they were, apparently, so construed by the Supreme Court in *Rocca* v. *Thompson* (*supra*) gives confirmation to our view that they have a like range and significance in the convention with Sweden.

Our conclusion, therefore, is that the right of Giovanni D'Adamo to letters of administration is prior to that of the Italian consul, and that letters should issue to him accordingly. Since the consul acted as the representative of a foreign government, and under the authority of decisions of the surrogates of this state, he ought not to be charged with the costs of the proceeding.

The order of the Surrogate's Court and that of the Appellate Division should be reversed, and the petition granted, without costs to either party.

WILLARD BARTLETT, Ch. J., WERNER, HISCOCK, COLLIN, HOGAN and MILLER, JJ., concur.

Order reversed, etc.