[Hall v. Santangelo, et al.]

# Hall v. Santangelo, et al.

## Final Settlement.

(Decided November 14, 1912.   60 South. 168.)

1. *Appeal and Error; Cross Assignment; Consent.*—Where no cross appeal was taken, a cross assignment of errors cannot be considered unless consent is given by appellant to such cross assignment, or there is a joinder in error by appellant on such cross assignment.

2. *Same; Harmless Error; Evidence.*—The admission in evidence of certain documents which were immaterial, and could not have affected the decision of the cause, was not prejudicial error.

3. *Fraud; Evidence; Range.*—As it is seldom a fraud can be the subject of direct positive evidence, where fraud is involved, a wide range of inquiry and evidence is permissible.

4. *Same; Prejudice; Motives.*—The vitiating effect of a fraudulent action cannot be negatived or mutualized simply because no injury attended the wrongful conduct, as the measure of such harm is found in the act and not in the result thereof.

5. *Executors and Administrators; Appointment; Fraud; Fees.*—Where a foreigner dies in this country, and one person got another with himself appointed as administrators, falsely represented that the other was the nearest of kin in America, their claim for commissions and attorney's fees will be disallowed although no injury resulted to the estate; no offender may profit by his own wrong.

6. *Same.*—Heirs of a decedent contesting the right of the administrator to the allowance of commissions and attorney's fees, on the grounds of fraud in the appointment, were properly allowed to introduce in evidence the docket of the probate court, showing that the administrator had taken out letters on the estate of forty-seven decedents in less than four months, the attorney being the same in each case, for the purpose of showing that the relation between administrator and his attorney was almost a business of administration, and that he was a dummy.

7. *Same; Accounting; Evidence; Fraud.*—In a final accounting with an administrator who had become such through fraudulently representing that another appointed with him was the nearest relative of deceased in America, the answer of such other administrator to a petition for removal admitting that he was not related to decedent, and did not know what the petition for letters contained when he signed it, and the petition seeking their removal were all admissible as showing fraud, when referred to the great celerity with which an action for damages for intestate's death was instituted, thus supporting a disallowance of fees.

APPEAL from Jefferson Probate Court.
Heard before Hon. J. P. STILES.

[Hall v. Santangelo, et al.]

Final settlement of E. D. Hall as administrator of the estate of Frank Santangelo, deceased, contested by the heirs of said Santangelo. From a decree disallowing counsel fees and commissions to the administrator, the administrator appeals. Affirmed.

GEORGE HUDDLESTON, for appellant. The expenses of litigation incurred by an executor from a reasonable regard for the interest of the estate must be allowed.— *Alexander v. Bates*, 127 Ala. 328; *Carroll v. Moore*, 7 Ala. 617; *Gould v. Hayes*, 19 Ala. 438; *Smith v. Canard*, 38 Ala. 708. The law does not visit executors or administrators with severer intendments than are indulged against agents generally.—*Henderson v. Simmons*, 33 Ala. 291; *Phillips v. Thompson*, 9 Port. 664; *Stewart v. Stewart*, 31 Ala. 207. The administrator was certainly entitled to his commissions. The court was in error in admitting the documents.—*First Nat. Bank v. Chaffin*, 118 Ala. 246; *Harwood v. Harper*, 54 Ala. 669.

JAMES A. MITCHELL, and SAMUEL B. STERN, for appellee. The burden of proof as to all credits is upon the administrator.—*Pearson v. Darrington*, 32 Ala. 262; *Prior v. Davis*, 109 Ala. 125; 11 A. & E. Enc. of Law, 112 Ala. 41. Fraud or unfairness on the part of an attorney will prevent him from recovering for services rendered.—10 Am. Dec. 179; 65 N. W. 395; 61 N. E. 838; 75 N. E. 682; 98 S. W. 178. Moreover, the court found fraud, and as it was sitting without a jury, its finding should not be disturbed unless clearly erroneous.—*Prince v. Edwards*, 57 South. 714. The court can properly refuse compensation to an administrator for proper cause.—18 Cyc. 1162. Great latitude is allowed where the issue of fraud is involved, and the

court was not in error in its rulings on the evidence.— *Ensley v. Hollingsworth,* 54 South. 101.

McCLELLAN, J.—This appeal, prosecuted by the personal representative, brings up for review the ruling of the probate court in disallowing certain items of credit claimed by the administrator on his final settlement.

The cross-assignment of error by the appellees cannot be considered, since it does not appear that a cross-appeal was taken, nor is there the requisite consent by the appellant for the cross-assignment of errors or a joinder in error therein by the appellant.—Rule 3, S. C. P., Code, p. 1507.

The items thus disallowed as credits, which appellant's counsel insists, in brief, were erroneously so treated, were these: $325, paid R. L. Leatherwood for services as attorney: $32.50, paid the administrator as commissions.

The intestate was an Italian subject. He was killed while in the service of the Tennessee Coal Company. The claim for this company's negligently causing his death was all the value left by or surviving intestate.

A statement of the circumstances attending the contest over the right to administer in the premises will be found in *Carpigiani v. Hall,* 172 Ala. 287, 55 South. 248. Our ruling in support and justification of a consular agent's right and privilege in respect of estates left, in their consular territory, by subjects of their governments, appears not to have commended itself to the Supreme Court of the United States. See *Rocca v. Thompson,* 223 U. S. 317, 32 Sup. Ct. 207, 56 L. Ed. 453. At any rate, counsel for appellant states, that the Carpigiani contest was not pressed beyond the judgment which this court rendered in revision of the lower

court's action upon demurrers to Carpigiani's petition. The heirs at law and next of kin of intestate (appellees) appear to have entered upon Hall's accounting as a *final* settlement of the administration.

The theory upon which the probate court seems to have proceeded to its conclusion, in disallowing these items, was that Leatherwood and Hall conceived and executed a fraudulent scheme or purpose to secure dominion or control over the administration of the estate of the intestate, wherewith they would and did attend to the institution, by Leatherwood as attorney, of an action, for his death, against the company in the service of which he was when he met his death.

The intestate, Frank Santangelo, died March 30, 1910. On April 15, 1910, E. D. Hall (appellant) and Virga Giuseppe filed a petition drawn by Leatherwood, praying their appointment as administrators of intestate's estate. On April 19, 1910, Carpigiani, the Consular Agent, filed his petition, seeking the removal of Hall and Virga as administrators and the revocation of the letters granted upon their petition. In their petition for letters it was averred that Virga was the cousin, friend, and nearest relative in America of intestate. On April 30, 1910, Virga filed his answer to the petition of the Consular Agent, in which he admitted that he was not related in any degree to the intestate; and set forth that Hall came to him and asked his consent to be appointed administrator of the estate of intestate, saying he (Virga) "could make good money out of it"; that he (Virga) could not read English; that he came to Birmingham with Hall, who took him to Leatherwood's office, where a paper was presented for his signature in order, it was said to him, to get his appointment as administrator; that he did not know the contents of the paper which he signed; that he did

not know it contained the untrue statement of his relationship to intestate, and therein and thereby consented to his removal as administrator of the estate.

On May 1, 1910, Leatherwood executed to Hall a receipt for $325, being one-half of the amount collected by Leatherwood from the Tennessee Coal Company in compromise and settlement of the suit brought, it seems, on April 27, 1910, by Hall as administrator for negligently causing intestate's death. At this time, when the suit for damages was instituted, and when it was settled as stated the Carpigiani petition was on file and pending in the probate court, and notice thereof had been served upon Leatherwood as attorney for Hall and Virga. Within five days after the service of this notice of the filing of Carpigiani's petition and of its setting for hearing April 30, 1910, the suit for damages was commenced.

In support of their contention the heirs offered in evidence, among other testimony, the verified petition of Hall and Virga, the petition of Carpigiani, the answer of Virga before mentioned, the demurrer of Hall to the petition of Carpigiani, the decree of the probate court sustaining Hall's demurrer to that petition, the bond made by Carpigiani for his appeal (172 Ala. 287, 55 South. 248), the certificate of reversal issued by the clerk of this court, the opinion of this court rendered on Carpigiani's appeal, and a docket of the Jefferson probate court from April 1, 1910, to December 15, 1910; "said docket showing that letters of administration had been granted to E. D. Hall (appellant) on the estate of 47 decedents during that time, the first being that of Frank Santangelo, the last letters being granted on July 22, 1910. On this docket the name of R. L. Leatherwood was entered as attorney for Hall, contestants stating when the docket was offered that it was offered

for the purpose of showing the number of administrations Hall had been in during that period at Leatherwood's instance."

So far as the appeal bond, the certificate of reversal, and the opinion of this court are concerned, they were without the remotest bearing upon the issue of fact upon which the allowance vel non of these two items appears to have been made to depend. Indeed, these documents were so entirely immaterial to the issue of fact, it is not possible for them to have had any effect whatever upon the casting of the judicial conclusion effected by the court in disallowing these items. We therefore feel no hesitancy in affirming that their reception, though assumed to be improperly in the case, was without the slightest prejudice to the appellant. On that appeal, as counsel for appellant points out in brief, issues of law, only, were presented and decided; and those so determined were, as counsel states, left without further invocation or application.

In controversies in which fraud is involved, a wide range of inquiry, and of evidence to satisfy it is allowed, for, it is said, it is seldom that fraud can be the subject of direct, positive evidence.—*Nelms v. Steiner Bros.*, 113 Ala. 562, 573, 22 South. 435. It is rarely possible to prove fraud "except by a comprehensive and comparative view of the actions of the party to whom it is imputed."—*Snodgrass v. Bank of Decatur*, 25 Ala. 174, 60 Am. Dec. 505.

The scheme and purpose imputed, as indicated, to Leatherwood and Hall, was of an illegal and fraudulent character; and, if its existence was established, the vitiating effect of it upon the right to these asserted items of credit upon the administrator's accounting is, we think, too clear to admit of doubt. To affirm to the

contrary would be to permit the offender to profit by his own wrong—a result not to be sanctioned.

Nor can the vitiating effect of a fraudulent action (if established) be negatived or neutralized by the assumption that no apparent injury attended the wrongful conduct. The measure and consequence of such a wrong is found in the act, fraudulently motived, not in the result therefrom. One who has criminally appropriated the property of another in a burning building or on a sinking ship would not be heard to claim exoneration or exculpation upon the ground that the property thus appropriated would, in fact, have been lost to the owner.

Touching the relevancy of facts and circumstances upon an issue of fraud, in *Nelms v. Steiner Bros.,* it was remarked that "their admissibility is dependent, not upon their *force,* but upon their *bearing";* that there is, perhaps, "no matter of more difficulty, presented to the court, than to draw the precise line which, upon an issue of fraud, separates facts or circumstances which are relevant from those which are irrelevant."

We find no error in the admission of the other items of evidence noted before. The documents filed by Hall and Virga, by Virga alone, by Carpigiani, and by Hall alone, in the administration's inception and upon its contest, bear directly upon the issue litigated. They serve to throw light upon—to explain—the acts of Leatherwood and Hall, particularly when referred to the celerity with which the action for damages for intestate's death was instituted; upon Leatherwood's knowledge of falsity of the averment of Virga's relationship to the intestate in the petition for their appointment which Leatherwood drew; upon the reflection that a course of conduct not consistent with that naturally, normally, to be expected from one entertain-

ing *fair* purposes, was pursued by Leatherwood in the premises.

The docket evidence mentioned was also properly admitted. It tended to show the relation, with respect to what appears to have been almost a business of *administrations,* existing at and about the time this administration was begun, between Leatherwood and Hall. When this documentary testimony is considered in connection with other testimony tending to show that Hall furnished to these very numerous administrations little, if anything, but the use of his name, its relevancy upon the issue is made even more clear. Other grounds in justification might be added; but this will suffice.

All of the evidence upon the issue stated has been carefully read and considered by the court. Thereupon our conclusion accords with that attained by the court below. Its decree is affirmed.

Affirmed. All the Justices concur.

DE GRAFFENRIED, J.—(concurring.)—The evidence in this case shows, without dispute, that Hall, the administrator, was a mere "dummy" of Leatherwood's. Leatherwood was a lawyer, and it is evident from all the evidence that he was unscrupulous in his methods of obtaining business. His principal legal business seems to have consisted in the prosecution of damage suits for personal injuries and for injuries resulting in death. Hall, who was a mechanic, was the man selected by Leatherwood to act as the administrator of the estates of those who died from such injuries, and, if Leatherwood could arrange to get Hall appointed the administrator of such an estate, then Leatherwood, as to such estate and as to the suit brought for the damages occasioned by such a death, became the complete master. Leatherwood made Hall's bonds as the admin-

istrator of such estates, brought the suits, settled or compromised them as he saw fit, handled all the money, and Hall had absolutely nothing to do with such suits or such estates except to receive from Leathewood sums in the shape of commissions.

In the present case the intestate died as a result of injuries received while in the employ of the Tennessee Coal Company. He was an Italian subject, and his only heirs were his father and mother, who resided in Italy.

Leatherwood, to get possession of a small sum of money which belonged to the estate of the deceased, and for the purpose of collecting something from the Tennessee Coal Company as damages for negligently causing the death of deceased, and for the further purpose of looting the estate, by false pretenses led the probate court of Jefferson county into issuing to Hall letters of administration upon the estate of the deceased. Shortly after this was done the Consular Agent of the Italian government residing in Jefferson county, representing the father and mother of the intestate, by appropriate proceedings prayed the probate court of Jefferson county to cancel the letters of administration which had been issued to Hall. The probate court, under a misapprehension of the law, declined to entertain the petition, and an appeal was thereupon taken to this court.

While the application to revoke the letters of Hall as administrator was still pending in the probate court of Jefferson county, Leatherwood brought a suit in the name of Hall, administrator, against the Tennessee Coal Company for damages for negligently causing the death of said intestate. While that application was still pending in said probate court, Leatherwood settled the suit against the Tennessee Coal Company for $650; but the Tennessee Coal Company required Leatherwood, in the name of Hall, administrator, to execute to

it a bond indemnifying it against loss, before it would pay over to him the said sum in settlement. Upon the settlement made by him in the name of Hall, administrator of said estate, he undertook to retain for himself the sum of $325 as fees for bringing said suit and collecting said money, $100 for money paid by him to an attorney for representing him in the proceedings instituted by the Italian Consular Agent, $32 for commissions paid to Hall as administrator, and $50 for fees paid an attorney for representing him on the final settlement. In other words, he undertook to reserve to himself the sum of $507 out of the $650 which he, in the name of Hall, administrator, had accepted from the Tennessee Coal Company as the value of a human life, or in composition of a suit affecting its value, and allow the father and mother the balance, $148, after deducting therefrom the court costs.

The evidence shows, as already stated, that Hall did *nothing* and was an administrator only in name. Leatherwood, as a lawyer was an officer of the court through which he undertook to perpetrate this fraud. He invoked its jurisdiction, not for the bona fide purpose of conducting an orderly administration of the intestate's estate for the benefit of the next of kin, but for the purpose of looting that estate. It was once said that the receiver of a railroad corporation and the court in control of the receiver were partners in the management and control of such railroad; but it can never be said that a probate court of Alabama is a partner in the fraud of one of its officers, or that it will lend its aid to one of its officials in the consummation of a fraud. The real party to this cause was not Hall, who never handled a dollar, but Leatherwood, who handled all of the money, and who yet has all of it except the $32 paid Hall and the amount paid by him to the attor-

neys for resisting the application of the Italian Con-
sular Agent and for representing the estate on final
settlement.   The distributees of the estate, the father
and mother of the intestate, were before the probate
court when the final settlement was made.   It was the
duty of that court to see to it that the estate to which
they were justly entitled was not taken from them
through the fraud of one of its officers, the real party
in interest—had unwittingly placed that officer in a
position to benevolently relieve them of funds to which
they were justly entitled.

This case is remarkable in that, for the first time,
perhaps, in the history of the state, has an *officer* of a
court, openly and without a blush, undertaken to use
that court to accomplish that which, it appears, was a
fraud on its face.   Parallel cases are not to be expected
to be found in books, but, when such cases do arise,
we think all courts have the power, by virtue of their
inherent powers over their officers, to meet their de-
mands.

While it is insisted that the distributees, by appear-
ing at the settlement and accepting the benefits of the
administration conducted by Leatherwood in the name
of Hall, estopped themselves from setting up Leather-
wood's fraud, it must be remembered that Leatherwood,
by inducing the probate court of Jefferson county to
grant letters of administration to Hall and by resisting
the efforts of the Italian Consular Agent to have those
letters revoked, placed the distributees in such a posi-
tion that they were forced to pursue the course adopted
by them.   The statute of limitations had barred the
right of the distributees—through a properly appoint-
ed administrator—to sue for damages suffered by them
by reason of the death of the intestate before they could
have had an administrator appointed, and all this be-

cause of the fraud of Leatherwood. They were forced to accept, through Leatherwood's fraud, the Hall administration as the only one, or get nothing.

The proposition that the letters of administration issued to Hall were, until revoked, *conclusive,* is not questioned. The court, however, on the final settlement of Hall, administrator, had before it Leatherwood, an *officer* of that court, over whom, as such *officer,* it had broad powers, and as Leatherwood had, by his fraud, placed himself *beyond* the pale of the court's consideration, it appears that the court had, as already stated, as to *him,* ample power to refuse to allow that officer to participate in any way, in a fund which, through *his* wrongful practices, had come into his possession. The court might well have concluded that an officer of the court who had fraudulently led the court into issuing letters of administration over the estate of an intestate to a dummy, who, without regard to the pendency of proceedings to revoke such letters, brought a suit in the name of such dummy to litigate the only thing of value belonging to such estate, and who settled that litigation *after* indemnifying the party sued against loss by executing to such party a personal bond of indemnity, had not occupied such a position as to properly represent or settle such a claim, and that such *officer* was entitled to *nothing* for the services so rendered.

The above furnishes the reasons of the writer of this opinion for concurring in the conclusion of this court that the judgment of the court below should be affirmed.

MAYFIELD and SAYRE, JJ., concur.