Argued June 26, modified July 31, 1928.

IN THE MATTER OF THE ESTATE OF OSCAR G. LA-BEREE.

ANITA LABEREE *v.* J. W. SIEMENS, ADMINIS-TRATOR.

(269 Pac. 861.)

For appellant there was a brief over the names of *Mr. D. V. Kuykendall* and *Mr. Robert Kuykendall,* with an oral argument by *Mr. Thomas E. Davis.*

For respondent there was a brief and oral argument by *Mr. Caleb Jones.*

BELT, J.—This is an appeal and cross-appeal from a decree of the Circuit Court modifying an order of the County Court in the settlement of the final account in the estate of Oscar G. Laberee, deceased. Laberee died in September, 1918, and left, as part of his estate, a large cattle ranch in Klamath County, Oregon. His widow was appointed executrix of the estate, but, on account of ill health, resigned in January, 1920, and, upon her petition, J. W. Siemens was appointed administrator. Prior to his appointment, Mrs. Laberee, as executrix of the estate, entered into a written contract with him on September 22, 1919, to sell "110 head of beef cattle now owned by the estate of Oscar G. Laberee, deceased; 375 head of stock cattle also owned by said estate and about 800 tons

of hay which is owned by said estate and now upon the real property belonging to said estate.'' The contract provided that Siemens was to pay $50 per head for all of said stock upon delivery to him at the Laberee ranch and that he pay $12.50 per ton for the hay ''now stacked and being upon said ranch.'' Delivery of the cattle on the range was to be made to Siemens as soon as they could be rounded up. Those upon the home ranch near Bly, Klamath County, Oregon, were to be delivered upon the execution of the contract. It was stipulated ''that all calves born since January 1, 1919, be thrown in free of charge.'' Siemens paid $12,000 upon the execution of the contract and agreed to pay the balance of the purchase price upon delivery of the hay and cattle. Siemens made further payments on the contract, namely, $5,000 on October 6, 1919, and $4,750 on November 7, 1919, which he claims was the balance due the estate for the cattle and hay actually delivered to him. It is his contention that he received only 285 head of cattle and 600 tons of hay, which, at the contract price, would amount to $21,750. In other words, Siemens says that he paid for the 285 head of cattle, at $50 per head, the sum of $14,250, and for the 600 tons of hay, at $12.50 per ton, the sum of $7,500. Mrs. Laberee, in her objections to the final account, seeks to charge Siemens on the basis that 485 head of cattle and 800 tons of hay, as specified in the contract, were delivered to him. The County Court found in favor of the plaintiff, cross-appellant, on this issue and charged the defendant administrator for the full amount of the cattle and hay specified in the contract. On appeal to the Circuit Court, plaintiff's contention with reference to the number of

cattle delivered was sustained, but the order of the probate court relative to the hay was modified in that it was found that there was delivered to defendant only 600 tons of hay.

■■ On this appeal, relative to this phase of plaintiff's objections to the final account, there is presented the question. What was the number of cattle and the amount of hay delivered to defendant? The burden of proof on this issue rests with the plaintiff. We are unable to concur with counsel for plaintiff that defendant is precluded from questioning the number of cattle and the amount of hay stated in the contract. It would seem elementary that it is the duty of the seller to deliver that which he has contracted to sell. It is always a good defense for the buyer to show that, in fact, the goods which he contracted to buy were never delivered to him. It is not a question of changing the terms of the written contract. Under the terms of this contract, the delivery of the cattle and the hay and the payment of the balance of the purchase price were concurrent acts. Delivery was a condition precedent to recovery of purchase price.

■ It seems to have been the intention of defendant to buy all of the beef and stock cattle owned by the estate. Likewise, he clearly intended to purchase all of the hay then in stack on the ranch. It is certain that the parties to this agreement did not have definite knowledge, at the time of its execution, as to the exact number of cattle or the amount of hay then on the ranch. We take it that this was a matter for final determination at the time of delivery. On the day the contract was executed, and before, Siemens and his agent, Givan, an experienced stockman, made

a general inspection of the cattle on the Laberee ranch, but, since all of them had not been rounded up from the range, it was impossible to ascertain the exact number of cattle, nor did they undertake to do so. The actual delivery was not made until October, 1919, at which time Givan tallied the cattle. He testifies positively that there were only 281 head, not including calves which, under the contract, were to be without charge. He says that four more head of cattle were delivered at a later date when rounded up from the range. At the time of the delivery in October, Hotchkins, who was foreman on the Laberee ranch, represented the estate in the transfer of these cattle, although his agency without good reason seems to have been disputed by the plaintiff. Hotchkins' testimony, relative to the number of cattle, is very uncertain and has but little weight in the determination of the question of fact under consideration. He says that he never tallied the cattle, although this is denied by Givan. Witness Walker, one of the appraisers of the estate, who at one time ran his cattle with those of Laberee, testified that the latter, at the time of his death, was the owner of about 255 head of beef and stock cattle. When Mrs. Laberee, on November 25, 1918, filed a petition with the County Court for an order authorizing the sale of cattle belonging to the estate, it was recited therein that there were "about 300 head of cattle." The sale was not made. Again, on September 3, 1919, a like petition was filed for permission to sell "said cattle" to the defendant herein. In the "Inventory and Appraisement" filed December 9, 1918, cattle belonging to the estate were listed as follows: "160 head of stock cattle; 80 yearlings; 97 calves." There is no evi-

dence that there was any material increase in the herd of cattle since the death of Laberee. If it be true that 485 head of cattle were delivered to the defendant, then, on account thereof, he would be indebted to the estate, aside from the question of interest, in the sum of $10,000. We find no demand was ever made on Siemens for any sum claimed to be due under this contract until objections were made to his final account which was filed on August 2, 1926. This fact has particular significance, since Mrs. Laberee was hard pressed for money for several years during the time Siemens was in charge of the administration of the estate. Why did she remain silent if Siemens was indebted to the estate in such a large amount for balance of purchase price on hay and cattle? She was continually writing to counsel for the administrator for funds, but never mentioned the claim which she now urges. Hotchkins, who worked on the ranch from 1917 to 1919 and was familiar with the cattle and other stock on the premises, testified that at about the time of the death of Laberee there were about 380 head of cattle. Whether this estimate included the calves is not certain, but we infer from the evidence that it did. It is true that Givan, at the time of the delivery of the cattle in October, was associated with Siemens under some sort of a partnership arrangement pertaining to the cattle business and for that reason his testimony should be closely scrutinized, but at time of the trial he had long since severed his relationship with the defendant and it appears that he was not altogether a friendly witness. We hold that the defendant has paid for all cattle delivered to him and that the decree of the court should be modified by eliminating this charge.

■ Relative to the question concerning the delivery of the hay, we agree with the trial court that the preponderance of the testimony on such issue was in favor of the defendant and that the hay in stack amounted to 600 tons. This hay was not measured before execution of the contract and it is clear that the insertion of the words "about 800 tons" was merely an estimate. Later the hay was measured and all of the witnesses who actually participated in such measurement were of the opinion that 600 tons was correct, although some of the witnesses differed as to the number of stacks. Hotchkins, the foreman and unquestionably the representative of Mrs. Laberee, was particularly positive on this point. It would greatly extend this opinion to quote the testimony of the various witnesses on this phase of the case and we are not inclined to do so.

■■ Objection was also made to rentals obtained on account of the lease of the ranch for the years 1920 to 1925. On May 1, 1920, the defendant, pursuant to an order of the court, entered into a written lease with Givan covering the Laberee ranch, at a stipulated rental of $2,000. As above stated, the latter was a partner of the defendant at such time and this relationship continued until December, 1922. Without obtaining further order from the court, Givan was permitted to hold over for the second year at a rental of $1,500. The property was leased to Givan for the third year for $1,350; for the fourth year at $1,460, and for the fifth year at $1,700. It should require no citation of authorities that it was highly improper and against public policy for the administrator to lease this property to his partner. In the petition for the order to authorize the making of the first year's lease, such partnership rela-

tionship was not disclosed. No doubt, the County Court would not have sanctioned the transaction had it been fully advised. The trial court very properly charged the administrator with the fair rental value of the premises for the entire five-year period, regardless of the amount of rent actually paid. We think $2,000 per year was a fair rental, notwithstanding the depression in the cattle business during some of the years, as Givan had the benefit and use of much farming equipment and other personal property not specifically included in the order of the court authorizing the lease.

■ When the defendant became administrator of the estate a Chandler automobile was on the ranch, which Mrs. Laberee had purchased with funds of the estate at a price of $2,100. After purchase it was equipped with shock absorbers at a cost of $300. Defendant used this car, both in his private business, and in that connected with the administration of the estate, for a period of about five years. He then sold it, without an order of the court, for $200. We think the evidence clearly establishes that Siemens appropriated and converted the car to his own use and he should, therefore, be held for its full purchase price, namely, $2,100, as it had been driven only 500 miles at the time he took possession of it. The trial court, with reference to this objection to the final account, charged the administrator with $1,100, as representing the depreciation in the value of the car and the proceeds of the sale.

We see no reason, further, to interfere with the findings of the learned trial court in the settlement of this final account. Therefore other assignments of error will be passed without comment.

The decree of the lower court will be modified in the particulars above stated and the cause will be remanded, with directions to proceed not inconsistent with this opinion. Neither party will recover costs nor disbursements in this court.     MODIFIED.

RAND, C. J., and BEAN and BROWN, JJ., concur.