Argued October 17, reversed and remanded November 28, 1951

IN RE THE ESTATE OF STANLEY R. FELBER,
DECEASED

FELBER ET AL. *v.* FELBER ET AL.
238 P. 2d 203

*David M. Spiegel* argued the cause for appellants. On the brief were Lenske, Spiegel, Spiegel, Martindale & Lezak, of Portland.

No appearance for respondents.

Before BRAND, Chief Justice, and HAY, ROSSMAN, LUSK and WARNER, Justices.

ROSSMAN, J.

This is an appeal from an order of the circuit court, probate department, which approved the final account of Ora Lee Felber, administratrix of the estate of Stanley R. Felber, deceased, and also that of Dale Jacobs, who was appointed administrator of the estate upon the revocation of the letters previously issued to the administratrix.

The appellants present these assignments of error:

1. "The Court erred in approving a final account which failed to account for rental or use of the house and car, and which failed to surcharge

Ora Lee Felber and the administrator for the reasonable value thereof."

2. "The Court erred in approving the administrator's final account upon complete absence of proof by the administrator when called upon to justify his account after objections were duly filed."

3. "The Court erred in granting as fees for the administration of the estate, a sum in excess of the statutory allowance therefor."

Stanley R. Felber, aforementioned, died in Clackamas County, February 16, 1948. He and Emma Felber were married October 26, 1910, in Tyndall, South Dakota. Six children were born of the union. They and the widow are the appellants.

Ora Lee Felber, upon her representation that she was the widow and sole heir of the decedent, was appointed administratrix of the deceased's estate March 2, 1948. She was removed December 29, 1948. June 8, 1948, she filed what purported to be her accounting. No final action was taken concerning it until March 16, 1950. Upon the removal of Ora Lee Felber as administratrix, the court appointed Dale Jacobs. September 26, 1949, he filed a document entitled First and Final Account. No final action concerning it was taken until March 16, 1950, when it was considered concurrently with the account of Ora Lee Felber. The notice of appeal challenges the order of March 16, which declares:

"It is considered, ordered, adjudged and decreed as follows:

* * *

"3. It is found that Emma Felber and the decedent were married on the 26th day of October, 1910, at * * * and said marriage continued until the death of decedent * * *.

"4. Decedent died intestate and the following are the heirs at law and next of kin of decedent, to-wit:"

At that point the order listed the widow (Emma) and the six children whom we have mentioned. Continuing, the order declared:

"11. The following administrator and administratrix fees be and are hereby allowed, to-wit:

"(a) To Ora Lee Felber, as administratrix, based upon the statutory percentage provided by Section 19-1011, O.C.L.A., 1940, and computed upon the appraised value of the within estate, excepting for the item of the automobile, and in that instance, computation being upon the sum received upon the sale thereof, $338.00.

"(b) To Dale Jacobs, as administrator, based upon the statutory percentage provided by Section 19-1011, O.C.L.A., 1940, and computed upon the appraised value of the within estate, excepting for the item of the automobile, computation being upon the sum received upon the sale thereof and plus a further allowance for extraordinary services performed, $388.00.

"(c) To Leonard Lindas, attorney for Dale Jacobs, $388.00.

"(d) To Maurice Eben, as attorney for Ora Lee Felber, $338.00.

\*   \*   \*

"13. It is further ordered that Dale Jacobs, administrator, and Ora Lee Felber, administratrix, be and are hereby discharged from further duties herein and the administration of the within estate is hereby closed and their bondsmen be and are hereby exonerated   \*   \*   \*."

The appellants, of course, do not contest paragraphs 3 and 4 of the above order. We included them for the purpose of showing the status of the appellants.

Section 19-1011, O.C.L.A., prior to its amendment by Oregon Laws, 1951, Ch. 493, said:

"The compensation provided by law for an executor or administrator is a commission upon the whole estate accounted for by him, as follows:

"(1) For the first $1,000, or any less sum, at the rate of seven per centum thereof;

"(2) For all above that sum. and not exceeding $2,000, at the rate of five per centum thereof;

"(3) For all above $2,000 and not exceeding $4,000, at the rate of four per centum thereof;

"(4) For all above the last mentioned sum, at the rate of two per centum thereof.

"In all cases such further compensation as is just and reasonable may be allowed by the court or judge thereof, for any extraordinary and unusual services * * *."

Section 19-1009, O.C.L.A., provides:

"An executor or administrator shall be allowed, in the settlement of his account, all necessary expenses incurred in the care, management and settlement of the estate, including reasonable attorney fees in any necessary litigation or matter requiring legal advice or counsel."

In determining the amount which will constitute reasonable compensation for an estate's attorney, this court has considered the percentages set forth in § 19-1011, O.C.L.A. Two instances are *In re Feehely's Estate*, 182 Or. 246, 187 P2d 156, and *Kirchoff v. Bernstein*, 92 Or. 378, 181 P. 746.

Ora Lee Felber appointed as the estate's attorney the aforementioned Maurice Eben. Mr. Jacobs appointed Leonard Lindas.

The inventory and appraisement showed that the estate possessed: Money, $824.56; and automobile, $1,000; a motor boat, $250; household furnishings,

$1,200; and an item of real property worth $8,000. The total was $11,274.56. When the automobile was sold, it brought $650, and after adjustment had been made for that fact, the value of the estate became $10,924.56. The real property had been the decedent's home.

Evidently the court, in awarding compensation to Ora Lee Felber and Maurice Eben, determined the amount payable to each in the following way:

| | | |
|---|---|---|
| First $1,000, | 7% thereof | $ 70.00 |
| Next $1,000, | 5% thereof | 50.00 |
| Next $2,000, | 4% thereof | 80.00 |
| 2% of $6,924.56 | | 138.49 |
| | | $338.49 |

The same amount of compensation was awarded to Mr. Jacobs and to Mr. Lindas, together with $50 to each for extraordinary services.

We have gone into the above calculations for the purpose of showing that the challenged order charged the estate with virtually double the amount of compensation contemplated by § 19-1011, O.C.L.A.

We shall now mention the manner in which the issues that await solution developed. March 2, 1948, Ora Lee Felber filed a petition in the probate department of the Circuit Court for Clackamas County in which she swore that she "is the widow of Stanley R. Felber who died in Clackamas County, Oregon, on the 16th day of February, 1948." She further averred that the decedent left a document entitled "A Will" which she tendered to the court, but described as improperly attested. Continuing, she averred:

"Your petitioner also represents that she is the sole heir at law of the said decedent and the sole beneficiary under the last will and testament aforementioned."

The prayer was:

> "That the above entitled will be admitted to probate or, if the same shall be deemed not entitled to proof, that she may be appointed administrator of the above entitled estate."

On the same day that the petition which we have just described was filed, the court entered an order which ruled that since the document which was tendered was not properly attested, it was not entitled to probate, but that since "Ora Lee Felber is the widow and sole heir at law of the decedent and has petitioned for Letters of Administration in the event" that the purported will was not entitled to probate, she was appointed administratrix of the decedent's estate. She promptly filed the required bond. Its amount was $6,000.

To facilitate an understanding, we explain that the decedent and Emma Felber, who were married October 26, 1910, were never divorced. The record indicates that at the time when the two were residing in the State of Montana, Felber instituted a suit for divorce, but was unsuccessful. However, the court, upon the application of the wife [Emma], granted her a decree which required Felber to contribute $80 monthly for the maintenance of her and the six children born to the couple. We shall hereafter refer to her as the widow and to Ora Lee Felber as Ora. The latter claims that she and Felber lived together as husband and wife for at least eight years prior to his death.

March 24, 1948, the appellant widow filed a petition in which she averred the fact which we have already mentioned, that is, that on March 2, 1948, Ora, through a false representation that she was the surviving widow of the decedent, gained appointment as administratrix of his estate. The petition recited the time of the couple's marriage and averred that the latter had

never been dissolved. A further statement in the petition follows:

"Your petitioner is a resident of Spokane, Washington, and therefore requests that Dorothy Martindale, a qualified resident of Clackamas County, Oregon, be appointed administratrix * * *."

The prayer was that "the order appointing Ora Lee Felber administratrix of the above estate be set aside and that Dorothy Martindale be appointed administratrix."

June 21, 1948, the widow filed an Amended Petition for Removal of Administratrix in which she stated in greater detail her reasons for applying for the removal of Ora as administratrix. It charged that Ora gained her appointment by "fraud and misrepresentation upon the Court." The charge was followed by detailed facts. The petition also averred:

"Said Ora Lee Felber is indebted to the above entitled estate for the use of real and personal property that belonged to the within estate. That more than 90 days have elapsed since the said Ora Lee Felber was appointed and qualified as administratrix of the above entitled estate, but she has failed to file an inventory and appraisement herein, nor has she sought or obtained an order extending the time for such filing."

The prayer was:

"That the person designated as Ora Lee Felber, administratrix, whose true name is unknown to petitioner, be removed as administratrix of the above entitled estate and that Dorothy Martindale be appointed."

December 29, 1948, the court, after a hearing, entered an order which, without stating the reasons, revoked the letters of administration previously issued

to Ora. Simultaneously with the revocation of Ora's letters, the court appointed the aforementioned Dale Jacobs as the administrator of the estate. No appeal was taken from the order of removal.

██ Section 19-222, O.C.L.A., as amended by Oregon Laws, 1941, Ch. 417, states bases for the revocation of letters of administration. The grounds given in that section of our laws are not exclusive: *In re Faulkner's Estate,* 156 Or. 23, 65 P.2d 1045. The inventory and appraisement were not filed until December 22, 1948. The court had ample grounds for the revocation of the letters previously issued to Ora, and, as we have seen, the court's order was never challenged.

June 8, 1949, Ora filed an accounting. It reported that (1) she had received $824.56 and had made no disbursements; (2 upon her appointment, she engaged Mr. Maurice Eben as the attorney for the estate; (3) after she was discharged as administratrix she delivered to Mr. Jacobs, administrator, her successor, everything which had come into her possession; and (4) "the sum of $345 is a reasonable sum to allow your petitioner for administratrix' fees and a like sum of $345 is a reasonable sum to allow her attorney, M. N. Eben, as attorney's fees herein." The accounting was not served upon the widow, the children, or their attorney. On the same day that the accounting was filed, that is, June 8, 1949, the court, upon ex parte presentation, signed an order which, after reciting, "It appearing to the Court that the said Ora Lee Felber has properly accounted for all funds and properties reported by her to be estate property," approved the accounting. The order ruled: "Fees to the said Ora Lee Felber, administratrix, and to her attorney, M. N. Eben, be deferred until further order of the Court." Thus, the order was not final. On the same day that the order

was entered, Mr. Jacobs signed a receipt in which he acknowledged that there had come into his possession all the items mentioned in the inventory.

May 18, 1949, Mr. Jacobs petitioned the court for an order authorizing him to sell the automobile owned by the estate. His petition recited: "Since the filing of said Inventory on March 10, 1948, the appraised value of the automobile has decreased perceptibly." No explanation of that fact was given. August 22, 1949, through a Return of Sale, Mr. Jacobs reported that he sold the automobile July 1, 1949, for $650. It accounted as follows for the receipt of a sum less than the appraised value ($1,000): "the decrease in the market price and the depreciated condition of said automobile." It will be observed that the sale occurred six months after Mr. Jacobs' appointment, or a year and four months after the death.

September 26, 1949, Mr. Jacobs filed his First and Final Account; the parts of it material to the issues before us are:

"There remains to be paid the fee of the above mentioned former administratrix, Ora Lee Felber, and said administratrix, as shown in her accounting filed with this court on June 8, 1948, made a request of reasonable sum in the amount of $345 and unless directed otherwise by this court, your administrator will deem this a reasonable sum and pay same."

The accounting made a similar statement concerning Eben, whom the administratrix had employed as attorney. Continuing, the accounting requested that the sum of $345 be allowed Mr. Jacobs, together with an additional amount of $50 for "extraordinary services involved in the sale of personal property", making a total of $395. The accounting asserted that a similar

sum should be allowed the administrator's attorney, Leonard I. Lindas.

October 31, 1949, the widow and her six children filed objections to the account of Mr. Jacobs, which included the following:

> "Ora Lee Felber was at no time the lawful wife of the decedent which she well knew, and she at all times knew that your objectors were, respectively, the lawful wife and children of decedent."

The objections affirmed that Ora, following the death of the decedent, had possession of the home, together with its furnishings, but that "no rental of any kind was reported to the court as having been received for the use of said house." It added that the property "had a rental value of not less than $35 per month." The objections, after mentioning that the automobile belonging to the estate was appraised as worth $1,000, said:

> "Ora Lee Felber used said automobile as her own and eventually moved from Oswego, Oregon, to San Francisco, California, and took said automobile with her and used it there as her own; that said automobile depreciated in value in the sum of $500 between the date of death of the decedent and the time that she returned said automobile from San Francisco to Portland after Dale Jacobs was appointed as administrator; that the rental value of said automobile during said period was likewise $500."

The objections urged that the administrator's account should be charged with the rental value of the automobile and of the dwelling house. They mentioned the fact that the accounting omitted reference to the household furnishings which were appraised as worth $1,200, and protested that no compensation should be allowed to either Ora or her attorney.

Sometime after Ora had vacated the home, Mr. Jacobs rented it at a monthly rental of $35. His account showed that he had received a total rental of $105.

October 31, 1949, Ora filed a petition in which, after setting forth that she and the decedent had lived together as husband and wife for more than eight years upon the real property which belonged to the estate, declared:

"Now and at all times since the death of said decedent, except for temporary absences, your petitioner has continued to live in said premises as her home and actual place of abode."

She prayed that the court set aside the home to her as a homestead.

March 16, 1950, the court entered the order which is the object of attack by this appeal. A previous paragraph quotes extensively from it. It dismissed the petition of Ora for the allowance to her of a homestead exemption in the home property. By reverting to it, it will be seen that it ordered the payment to Ora of an administratrix fee in the amount of $338 and a similar amount to Mr. Eben. It granted to Mr. Jacobs, administrator, $388, and to his attorney the same amount.

The above will suffice as a statement of the facts to which the assignments of error are applicable.

We shall now consider the first assignment of error which, as will be recalled, is based upon a contention that the final accounting of the administratrix and of the administrator were not entitled to approval because they "failed to account for rental or use of the house and car."

Ora had possession of both the automobile and the home, together with the latter's furnishings, from the

decedent's death until sometime after Mr. Jacobs' appointment as administrator. She resided in the home and made use of both it and the automobile to the same extent as if she had been their owner. She even drove the automobile to San Francisco and used it there. After Mr. Jacobs' appointment, Ora delivered the automobile to him, but seemingly nothing was said about payment for its use. While she used the car it depreciated in value $350. It was not sold until July 1, 1949, one year and four months after the death. So far as the record discloses, Ora had possession of the car all of that time. Thus, the car was not sold until six months after Mr. Jacobs' appointment. As we have seen, Mr. Jacobs rented the home at a monthly rental of $35 after Ora had vacated it. He reported the receipt of a total rental of $105, that is, three months' rent. He was appointed December 29, 1948, and his report was filed September 26, 1949. No explanation was offered for the omission to have collected rent for the long period that passed after the death.

Section 19-301, O.C.L.A., says:

"The executor or administrator is entitled to the possession and control of the property of the deceased, both real and personal, and to receive the rents and profits thereof until the administration is completed, or the same is surrendered to the heirs or devisees by order of the court of judge thereof; * * *."

The following is taken from *In re Witherill's Estate,* 178 Or. 253, 166 P.2d 129:

"The title of all realty upon the death of the owner passes to his heirs, in the event he dies intestate, subject only to the right of the administrator to the possession thereof for the payment of debts. Blake v. Blake, 147 Or. 43, 31 P. (2d) 768; §§ 19-301 and 19-1202, O.C.L.A. A vested equitable right in

personal property is acquired by the heirs immediately on the death of the intestate. Their interest therein, however, is uncertain and contingent until it is ascertained that a surplus remains after the debts and expenses of administration are paid. In re McLeod's Estate, 159 Or. 687, 82 P. (2d) 884."

According to 21 Am. Jur., Executors and Administrators, p. 545, § 291:

"As a general rule, an executor or administrator may be required to account to the heir for the income of real property of the decedent which he occupies and uses; and if he occupies the decedent's real estate, he may be charged with a reasonable rent therefor. So, if he occupies for his own purposes a part of it, he may be charged with the rent of the portion occupied. By such occupancy he becomes the tenant of the estate and renders himself liable for the value of its use and occupation and for any profit derived by subletting it."

■ In 33 C. J. S., Executors and Administrators, p. 1271, § 259, subd. (c), it is stated:

"A personal representative who takes over the possession, control, or use of his decedent's realty must account for the rents and profits which he received or should have received."

The principles of law stated in the two texts from which we just quoted, together with the demands of § 19-301, O.C.L.A., were applied in *Weinke v. Majeske,* 163 Or. 483, 97 P.2d 179; *Hofer v. Gofner,* 134 Or. 46, 292 P. 1027; and *Estate of Laberee,* 126 Or. 301, 269 P. 861.

In the following excerpt, which we take from *Estate of Laberee,* supra, the terms "defendant" and "administrator", as well as the name "Siemens", refer to the same individual.

"When the defendant became administrator of the estate a Chandler automobile was on the ranch,

which Mrs. Laberee had purchased with funds of the estate at a price of $2100. After purchase it was equipped with shock absorbers at a cost of $300. Defendant used this car, both in his private business, and in that connected with the administration of the estate, for a period of about five years. He then sold it, without an order of the court, for $200. We think the evidence clearly establishes that Siemens appropriated and converted the car to his own use and he should, therefore, be held for its full purchase price, * * *."

In the present instance, the appellants (objectors) do not seek to charge the account of the removed administratrix with the value of the car on any theory of conversion, and yet, had they submitted the the matter, they could have hoped to succeed.

██ From the foregoing, it is clear that the estate was entitled to the rent money for the use of the home and the automobile which the estate's representatives would have received had they employed reasonable diligence. Obviously, Ora was not entitled to live, rent free, in the home, and she was not entitled to the use of the automobile without paying for its fair rental value. When she occupied the home and used the automobile, she did so, not in her fiduciary, but in her individual capacity. She was a fiduciary and as such was subject to all the restrictions which the law imposes upon a fiduciary in his use of trust property. When, instead of refraining from using the estate property, she occupied the home and used the automobile, it was her duty to have entered in the estate's records, as a credit to the estate and a debit against herself, amounts representing nothing less than the fair rental value of both of those items of property.

██ We believe that the account of Ora, as administratrix, should be surcharged with the fair rental value

of the home and of the automobile from the day of her appointment to the time of her removal. The account of Dale Jacobs, as administrator, should be surcharged with the fair rental value of the home from the time of his appointment until he began collecting rents therefrom, unless he can give a satisfactory explanation for his neglect to have collected rents sooner. He should likewise be charged with the fair rental value of the automobile for the same period, unless he can give satisfactory reasons for his omission to have charged any rental. Such is our disposition of the first assignment of error.

We shall now consider the third assignment of error. It is stated in a preceding paragraph.

Section 19-210, O.C.L.A., in setting forth the order of precedence for the issuance of letters to representatives of decedents' estates, begins the enumeration with: "(1) To the widow, widower, or next of kin in the discretion of the court." By falsely describing herself as the widow and sole heir of the decedent, Ora brought herself into the preferred category and procured her appointment. To accomplish her purpose, she called to her avail perjury and false pretense, both of which are felonies under the laws of this state. When the truth came out, her letters of administration were revoked. This, therefore, is not an instance in which a person, acting in good faith, performs services as an administrator under letters erroneously issued. This is a case in which a person gained letters of administration by the use of perjury for the purpose of bringing an estate under her dominion for the advantages which she would secure thereby. The question now presents itself: Can the award of compensation to Ora be sustained.

■ The peremptory language in which § 19-1011,

O.C.L.A., is cast is unavailing in fixing the compensation, if any, which should be awarded to a removed administrator. As was said *In re Elder's Estate,* 164 Or. 347, 101 P.2d 412:

"Where an executor is removed before complete administration it is generally a question of judicial discretion as to the amount of compensation, if any, to be allowed."

In *Succession of Pierre Morere,* 3 La. A. 155, it appeared that one Bartholomew Morere, a brother of the decedent, with full knowledge of the latter's insanity, caused to be probated ex parte a paper which purported to be the deceased's will in which Bartholomew was named executor. Later, at the suit of the widow, the will was declared void, its probate set aside, and the executor divested of his trust. Still later the ousted executor filed his account wherein he entered himself as a creditor of the estate for $660.45 due him for his services and, also, for $500 as compensation for his attorney. The widow opposed the allowance of the claim. From an order which dismissed her objections, she appealed. In holding that the objections should have been sustained, the appellate court said:

"If, however, the person named as the executor of a will is in bad faith; has full knowledge of the absolute nullity of the will; and, as in this case, knows of the notorious insanity of the person making the will at the time of its execution; is himself a secret debtor to the deceased in a large amount, and not only does not reveal these facts on presenting the alleged will to the Court for probate in order that the validity of the will may be inquired into contradictorily with all parties interested, before any order of probate is made, but who, on the contrary, hurriedly caused the will to be probated and himself to be recognized as executor thereunder, he but perpetrated a fraud on the Court and must

personally bear all the expenses which his fraudulent action has entailed.

"Still less can he be made a beneficiary of his illegal acts by recovering commissions as executor.

\* \* \*

"In the instant case Bartholomew Morere's conduct was beyond simply defending a 'personal interest,' and, in a measure, greater than the mere commission of an act of maladministration. He had practiced, as we have said, a fraud on the Court by presenting and urging for probate, and having probated a paper purporting to be a will, which the Supreme Court in the case, cited, supra, declares he knew was executed at a time when his brother was notoriously insane. He cannot be allowed any commissions and to that extent the judgment will be set aside."

The court, referring to Bartholomew, said:

"No expense incurred by him in his effort to maintain this will can be imposed on the estate, whether that expense be for attorneys fees or for other purposes."

In *Succession of Miller,* 27 La. Ann. 574, the court said:

"The judgment is erroneous in allowing commissions to the public administrator, and in allowing the sum of one hundred dollars for attorney's fees. The public administrator was wholly without right to administer the estate. He knew that the deceased had left a wife, and he was in hot haste to procure an order granting him the administration before her application for it could be presented, and which he knew was already prepared and about to be presented."

*Hall v. Santangelo,* 178 Ala. 447, 60 So. 168, is another instance in which compensation for administration was denied to a wrongdoer. As shown by the opinion just cited, and, also, by *Carpigiani v. Hall,* 172

Ala. 287, 55 So. 248, which represented an earlier phase of the case, an attorney by the name of R. L. Leatherwood procured the appointment of E. D. Hall and Virga Giuseppe as joint administrators of the estate of one Francesco Santangelo, deceased, through a false representation that Giuseppe was the friend and cousin of the deceased. The latter lost his life in the plant of his employer, and a claim for damages arising out of the death was the only asset belonging to the estate. Shortly after the appointment of the joint administrators, the Italian consular agent petitioned for revocation of the appointments upon averments that Giuseppe was not related to the deceased and that the purposes of the appointees were, not to serve the best interests of the estate, but to appropriate it fraudulently to their own uses. Further, his petition showed that the deceased was survived by his father and mother. At that juncture, Giuseppe confessed the fraud. Hall, upon the other hand, demurred to the petition of the consular agent on the ground that the latter had no interest in the estate. The probate court sustained the demurrer. In the meantime, Leatherwood brought an action in the name of Hall, the remaining administrator, against the employer, and presently effected a settlement whereby he obtained $650. Of that sum, Leatherwood sought to keep $325 as compensation for his services in the death action, $100 as fees in the proceeding instituted by the consular agent, $50 as fees in the final accounting proceeding and $32 as an administrator fee for Hall. Upon appeal from the probate court's order, the appellate court reversed the order and, upon remand, the probate court disallowed all of the sums which we have just mentioned. It held that Leatherwood and Hall, in pursuing their court, were engaged in a fraudulent scheme to secure

dominion over the estate. From that order, Hall, as administrator, appealed. In affirming the order of the probate court, the decision under review said:

"The scheme and purpose imputed, as indicated, to Leatherwood and Hall, was of an illegal and fraudulent character; and, if its existence was established the vitiating effect of it upon the right to these asserted items of credit upon the administrator's accounting is, we think, too clear to admit of doubt. To affirm to the contrary would be to permit the offender to profit by his own wrong—a result not to be sanctioned.

"Nor can the vitiating effect of a fraudulent action (if established) be negatived or neutralized by the assumption that no apparent injury attended the wrongful conduct. The measure and consequence of such a wrong is found in the act, fraudulently motived, not in the result therefrom. One who has criminally appropriated the property of another in a burning building or on a sinking ship would not be heard to claim exoneration or exculpation upon the ground that the property thus appropriated would, in fact, have been lost to the owner."

We shall review the authorities no further. We know of none which holds that a person who procures his appointment as administrator through the employment of perjured representations, for the sole purpose of serving his own designs, is entitled to compensation. Further, we know of nothing beneficial to the estate that was done by Ora except her act in filing the inventory. We add that she did not file that document until a petition had been presented by the appellants which cited her dereliction and prayed for her removal. In truth, the inventory and the appraisement were not filed until December 22, 1948, ten months after the death. In the meantime, it had been made evident that she was not the decedent's widow and was not entitled

to retain her letters. Notwithstanding those facts, she appropriated the home and the automobile to her own use. Through reiterated false claims that she (1) was the decedent widow; (2) was his sole heir;. (3) was entitled to a homestead, or widow's, exemption in the home property; and (4) was entitled to remain in office as administratrix, Ora delayed the administration of the estate and subjected those who sought to administer it in the manner contemplated by law to burdensome expense and repeated appearances before the court. In fact, she managed to retain for ten months her letters of administration which had been issued to her upon her perjured petition.

■ The law does not reward fraud, deceit, and chicanery; to the contrary, it condemns artifice, and offers the victim all of its remedies and protection. The law, in some instances, may move with leaden feet, but in the end it leaves the impostor with no vestige of an advantage. Its purposes are not fulfilled until he has been stripped of every advantage his guile gained for him. We are clearly satisfied that Ora Lee Felber was entitled to no compensation whatever. The order awarding her compensation must be vacated.

■ It does not affirmatively appear that when Mr. Eben presented Ora's false petition to the court, by means of which she procured her appointment as administratrix, he knew that her statement was perjured. Yet he persisted in presenting to the court her repeated false representations when he had reason to distrust her word. He never asserted that Ora and the deceased contracted any sort of a marriage, ceremonial or common law, but argued that the law presumes that a marriage has taken place whenever a man and a woman live together as husband and wife. Clearly, the law engages in no presumption of that kind after it

affirmatively appears that the man has a wife from whom he was never divorced and is the father of children who vainly look to him for support. Notwithstanding those circumstances, if we were satisfied that Mr. Eben's services were of substantial value to the estate, we might be justified in remanding the cause to the probate court for the purpose of having it make an award of compensation to him to the extent that his services had benefited the estate. However, the record shows that the affairs of the estate remained stationary after the inventory had been filed, with the exception that Ora appropriated the home and the automobile. After she had done so, all efforts were directed to the purpose of retaining for her the advantages which she had gained, as well as compensation in the form of administratrix fees. Those unwarranted maneuvers have prevented, for two and one-half years, the widow and children from receiving an estate which our law intends they should have.

■ We conclude that nothing should have been allowed to either Ora Lee Felber or Mr. Eben. We sustain the third assignment of error. Compensation should be awarded to no one except the present administrator and his attorney.

The above also suffices as a disposition of the second assignment of error.

The order challenged by this appeal is reversed and the cause is remanded with directions to enter a new order in harmony with the principles set forth in this opinion.