Argued February 23; affirmed March 16, 1937

In re Faulkner's Estate
FAULKNER et al. *v.* FAULKNER
(65 P. (2d) 1045)

*G. A. Heikkila* and *Ernest Cole*, both of Portland, for appellant.

*A. G. Fletcher*, of Portland (Gunther F. Krause, of Portland, on the brief), for respondent.

BELT, J. This is an appeal from an order removing the administratrix of the estate of George Faulkner, deceased. The letters of administration were revoked for the reason that the interest of the administratrix was antagonistic to the interest of the estate. The petition for removal was filed by Louise Faulkner, first wife of the deceased, individually and as guardian ad litem for a minor son, Jack Gordon Faulkner. The administratrix was originally appointed by virtue of her preference as the widow of the decedent Faulkner, who died intestate on March 21, 1936.

The sole question is whether the evidence is sufficient to justify the probate court in removing the appellant as administratrix of the estate. No serious contention can be made as to the sufficiency of the petition. The question for decision is one of proof rather than of pleading.

■ On November 16, 1918, George Faulkner obtained a decree of divorce from Louise Faulkner, who defaulted and made no appearance. The decree awarded the custody of the minor child to the mother and provided for a payment by Faulkner of $20 a month for the support and maintenance of the child. Two weeks after this decree was entered, the administratrix and George Faulkner were married at Vancouver, Washington. Much is said in the briefs concerning the alleged procurement of the decree of divorce by fraud and the alleged invalidity of the marriage of the administratrix with the decedent. We pass these questions without comment, however, since they can not be determined in a proceeding for the removal of an administratrix. Several years after the administratrix and Faulkner were married they engaged in business in the sale of electrical supplies in the city of Portland. Through their joint efforts and industry, the business prospered in a small way and from the profits thereof the Faulkners secured their livelihood. In 1931, a corporation was organized and the family business was taken over by the George Faulkner Company. Fifty shares of stock were issued as follows: 48 shares to George Faulkner; one share to the administratrix; and one share to a sister of the administratrix. Within a few days after the incorporation of the company, Faulkner transferred 45 shares of the stock to the administratrix. At the time of Faulkner's death in 1936, the stock book of the company disclosed that 46 shares were issued to the administratrix; three shares to decedent; and one share to a sister of the administratrix. The named consideration for the transfer of stock was one dollar and "love and affection". The three shares of stock in the name of the decedent were, in the ad-

ministration of the estate, appraised at $10 a share. This appraisement was made by a brother of the administratrix who had been elected president of the corporation; a brother-in-law of the administratrix; and the general manager of the company. Petitioner asserts a false and fraudulent under-appraisement brought about through the connivance of the administratrix. In fairness to the probate judge, it appears from the record that he would not have appointed such appraisers had he been advised of their relationship and the positions occupied with the company. It is difficult to reconcile $10 a share—or a total of $500 as the corporate assets of this company—with the financial statement made by the company in 1931, showing net assets in excess of $5,000. The corporation operated throughout the depression, paying $200 a month in salaries to its officers—$125 a month going to decedent and $75 a month to the administratrix.

At this juncture it is well to turn to the activities of the petitioner, the first wife of the decedent. In 1923, contempt proceedings were instituted against Faulkner by reason of his default in payment of alimony awarded for the support of his minor son. In 1927, the decedent entered into a written contract with petitioner which, after reciting therein that he was $1,000 in arrears in payment of alimony, provided that future payments should be made first in the sum of $30 each month and later in the sum of $25 a month until arrearage under the terms of the decree had been met. Faulkner, however, failed to comply with this agreement and at the time of his death the evidence tends to show that he was in arrears $4,000. A claim for that amount against the estate was filed with the administratrix.

■ It is the contention of the petitioner that the transfer of stock from Faulkner to the administratrix was fraudulent and without consideration and was done for the purpose of avoiding decedent's obligation for payment of alimony. Petitioner further urges that the administratrix failed to file an inventory of the true assets of the decedent and that, instead of three shares of stock being listed as owned by the estate, the inventory should have shown 24½ shares in order to equalize her interest in the company with that of the estate. If such transfer were compelled, the estate and the administratrix would then each own 24½ shares.

Obviously, the administratrix would be in no position to maintain a suit for the transfer of the stock in view of her antagonistic interests. Under the facts as disclosed by the record, the probate court, in the exercise of a sound legal discretion, properly appointed the Portland Trust and Savings Bank as administrator of the estate, in order that petitioner and her son could obtain a fair and impartial consideration of their claims against the estate. It is well established that when antagonistic interests arise between an administrator and the beneficiaries of an estate, it is ground for revocation of letters of administration: *In re Manser's Estate*, 60 Or. 240 (118 P. 1024); *Bean v. Pettengill*, 57 Or. 22 (109 P. 865); *Marks v. Coats*, 37 Or. 609 (62 P. 488); *In re Mills' Estate*, 22 Or. 210 (29 P. 443); 23 C. J. 1113. Probate courts are vested with large discretionary power in control of executors and administrators in the administration of estates, and appellate courts should not interfere unless there is a plain abuse of such discretion: *In re Marks' Estate*, 81 Or. 632 (160 P. 540); *In re Marks and Co.'s Estate*, 66 Or. 340 (133 P. 777).

■ In this proceeding we are not determining whether, in fact, there was a fraudulent transfer of stock or an intentional concealment of assets. The more pertinent inquiry is: Has the petitioner shown a substantial and bona fide claim of interest in the estate adverse to that of the administratrix? We answer that question in the affirmative. There is other property, real and personal, involved—claimed by petitioner as assets of the estate not listed in the inventory—but it is believed that the evidence relative to transfer of the stock and its valuation is sufficient to warrant the court in holding that the administratrix should be removed.

The decree is affirmed. Petitioner is entitled to costs and disbursements.

BEAN, C. J., and ROSSMAN and KELLY, JJ., concur.