Argued March 16, reversed April 6, petition for rehearing
denied May 10, 1960

# SPAULDING *v.* MILLER

350 P. 2d 1073

504

*Edward L. Clark, Jr.,* and *Owen M. Panner* argued the cause for appellant. On the briefs were Clark and Marsh, Salem, and McKay, Panner and Marvin, Bend.

*Asa L. Lewelling,* Salem, argued the cause for respondent. With him on the brief was Roy Harland, Salem.

Before MCALLISTER, Chief Justice, and PERRY, O'CONNELL and HARRIS, Justices.

HARRIS, J. (Pro Tempore)

This proceeding was initiated by a petition for removal of defendant, Ernest H. Miller, as guardian, filed in the matter of the guardianship of the estate of Elva Maude Miller by Bruce Spaulding as a friend and attorney for Elva Maude Miller who, in July, 1949, was committed by the circuit court of Marion county to the Oregon State Hospital. The record also shows that on April 25, 1951, the same court, upon a representation that it was necessary for the care and attention of the estate of said Elva Maude Miller that a guardian thereof be appointed, did appoint her son, the defendant Ernest H. Miller, as guardian of her estate. The plaintiff was employed in 1947 to repre-

sent Elva Maude Miller in divorce proceedings that had been brought against her in Clackamas county by her husband, Ernest A. Miller, who is the father of the defendant Ernest H. Miller. This divorce suit is still pending on the countersuit of Elva Maude Miller.

The petition herein alleged that the defendant, Ernest H. Miller, the guardian of the estate of Elva Maude Miller, has been unfaithful to and neglectful of his trust in certain particulars, to the probable loss of the estate. It is also alleged the guardian has personal interests which conflict with those of the ward and her estate and that he has failed, refused and neglected to discharge his trust duties as guardian. The defendant's answer denies these charges and alleges that he and his brother, as the ward's next of kin, are the only persons interested in the ward's estate. The prayer of the petition is for the removal of defendant as guardian, the appointment of a bank as guardian, and for an accounting by Ernest H. Miller. From an adverse order, plaintiff appeals.

■ Shortly before the cause was argued in this court the defendant filed a motion to dismiss the appeal on the ground it was moot. This motion was based upon an order of the circuit court dated March 10, 1960, by which the guardianship of the ward was terminated, her guardian discharged and final accounting approved. However, on March 14, 1960, this order was set aside by the circuit court as having been improvidently granted. The motion to dismiss the appeal is, therefore, denied.

On March 14, 1960, the defendant presented to this court (by motion to augment the record, which we allow) a certified copy of an order of "competency" of the ward entered in the circuit court on October 1, 1959. For the guidance of the court and the parties

hereto, we feel it is our duty to pass upon the legal effect of this order of "competency." The order of "competency" entered by the circuit court was made pursuant to ORS 426.305, which reads as follows:

"A certificate of discharge filed pursuant to ORS 426.300 shall state whether or not the patient is competent. A certified copy of this certificate shall be filed by the superintendent with the court which committed the patient. If it sufficiently appears from the certificate that the patient is competent, the court, without the filing of a petition or a hearing as provided in ORS 33.820 shall enter an order so declaring."

It will thus be noted that the order entered by the circuit court as required by ORS 426.305 is to be made if it sufficiently appears from the "certificate of discharge filed pursuant to ORS 426.300" that the patient is competent.

ORS 426.300, which provides for a certificate of discharge, reads as follows:

"(1) The superintendent of any state hospital wherein are confined persons adjudged to be mentally diseased may, by filing his written certificate with the State Board of Control, discharge any patient, except one held upon an order of a court or judge having criminal jurisdiction in an action or proceeding arising out of criminal offense, at any time as follows:

"(a) A patient who, in his judgment, is recovered.

"(b) A patient who, in his opinion, is a dotard and not mentally diseased.

"(c) Any patient who is not recovered but whose discharge, in the judgment of the superintendent, will not be detrimental to the public welfare, or injurious to the patient.

"(2) Before making such certificate, the super-

intendent shall satisfy himself by sufficient proof that the friends or relatives of the patient are willing and financially able to receive and properly care for the patient after his discharge."

The certificate or notice of discharge executed by the superintendent of the Oregon State Hospital pursuant to ORS 426.300 reads as follows:

"* * * I, D. K. Brooks, M.D. Superintendent of the Oregon State Hospital, hereby certify that Elva Maude Miller, a patient in said hospital, who was admitted from Marion County on July 18, 1949, is discharged from said hospital on this 1st day of October, 1959, under authority of ORS 426.300(1) section C.

"Patient is: Competent
                        Incompetent

Paroled 9-24-58

                              "D. K. Brooks, M.D.
                              Superintendent
                              Oregon State Hospital."

We thus have the unusual situation wherein it appears from the certificate or notice of discharge executed by the superintendent of the Oregon State Hospital that he has discharged the patient from the state hospital under authority of § (c) of ORS 425.300(1) which provides for the discharge of a patient who has not recovered from mental illness and at the same time the superintendent has underscored the word "competent" on the certificate, presumably to indicate that the patient was "competent" at the time of discharge.

■ In *State v. Garver,* 190 Or 291, 303, 225 P2d 771, and in civil cases therein cited, this court holds that the law presumes that insanity (here established in

1949) having once been shown to exist, continues until the contrary is made to appear.

■ Assuming, however, that under the circumstances mentioned, the order of "competency" made by the court on October 1, 1959, was valid, such an order, in our opinion, only determines that the patient was competent to be free from custodial restraint of any nature. (ORS 33.820(4)) A determination of the foregoing would not be a determination of such a restoration as to terminate the necessity of the guardianship of the estate of the ward, i.e., a determination that the ward was able to handle and take care of his own property.

■ As stated in *In re Des Granges,* 102 Cal App 592, 598, 283 P 103:

"* * * It is the duty of the court to zealously guard the property of a person who has been declared to be insane or incompetent (*Sullivan v. Dunne, supra*) and upon a proceeding to restore such a person to capacity, to require proof not only of said person's sanity, but also of his ability to take care of his property, and that he is not likely to be deceived or imposed upon by artful or designing persons."

In 28 (old) Am Jur 679, 680, Insane and Other Incompetent Persons § 36, it is held:

"* * * The courts have largely relied upon the opinions of qualified physicians and alienists in testing the advisability of discharging those confined to insane asylums, but have, at the same time, recognized that the determinant factors in such situations are not necessarily the same as those which decide the discharge of a committee or guardian of an incompetent. *In the latter instance, entirely different considerations are involved from those which arise in discharging the person of a lunatic from custody.*" (Emphasis supplied.)

The Supreme Court of California in *In re Zanetti*, 34 Cal2d 136, 143, 208 P2d 657 (1949) held:

> "* * * Proceedings pursuant to the provisions of the Probate Code (see § 1460, quoted above) are designed to protect an incompetent who is for any reason mentally incapable of taking care of himself and of his property. The incompetency determined here need not be the result of insanity, e.g., 'mental illness,' and no confinement is contemplated. Protection of the incompetent from others is the main purpose of the statute."

■ There is no indication that the legislature intended the procedures set forth in ORS 426.300-426.305 to be the equivalent of or to replace the procedure set forth in ORS 126.510(2) for the judicial determination that a guardian appointed for an incompetent or mentally diseased person may be discharged by the court when it appears to the court that such guardianship is no longer necessary.

ORS 126.510(2) reads as follows:

> "A guardian appointed for a minor, a spendthrift, an incompetent or a mentally diseased person, may be discharged by the court when it appears upon the application of the ward, or otherwise, that such guardianship is no longer necessary."

■ There is no indication that the perfunctory order provided for in ORS 426.305, based as it is entirely on a superintendent's certificate, ex proprio vigore, constitutes a legal determination that a ward under guardianship as an incompetent would thereby be made to appear to possess the ability to manage and take care of his property.

We, therefore, hold that no legal determination has yet been made justifying the termination of the guardianship proceedings.

We have carefully studied the record and the contentions advanced by the parties to this appeal. We follow the advice of this court where in an analogous situation it is stated:

"* * * we do not think it proper to discuss it [the evidence] in detail, as it appears probable that the matters argued in the petition to remove defendant may hereinafter become the subject of litigation." *Bean v. Pettengill*, 57 Or 22, 23, 109 P 865.

■■ It is sufficient to state we are of the opinion that the record discloses the fact that there is such a conflict between the interests of defendant and those of the ward that he ought not to remain as guardian of her estate. There is also evidence tending to indicate the present guardian has not fully marshalled all assets of the ward's estate. We do not pass on the merits of this issue which cannot herein be litigated. We do hold, under all the facts, circumstances and conditions shown by the record, that a disinterested guardian should be placed in charge of the ward's estate, who will cause all the alleged derelictions of duty and charges of misconduct to be fully investigated. The holding of this court in *In re Faulkner's Estate*, 156 Or 23, 28, 65 P2d 1045, is here applicable.

"In this proceeding we are not determining whether, in fact, there was a fraudulent transfer of stock or an intentional concealment of assets. The more pertinent inquiry is: Has the petitioner shown a substantial and bona fide claim of interest in the estate adverse to that of [the interest of] the administratrix?"

■ Defendant asserts, however, that plaintiff is not a proper person to initiate this proceeding to remove defendant as guardian. ORS 126.505 provides:

"Whenever it appears to the court that any

guardian has neglected his duty, or otherwise is disqualified, the court, either on its own motion, after notice, or upon application made by any creditor, ward or other person interested in the estate, may, in the manner and upon the grounds provided for the removal of an executor or administrator, remove such guardian."

Plaintiff has been the ward's attorney for several years in the divorce proceeding earlier mentioned. Since her confinement to the state hospital as an incompetent, no further action could be taken therein. Under the record it appears there was no one but plaintiff to bring to the attention of the court the alleged wrongful conduct of the guardian.

"But a court is not necessarily left to await the filing of a petition or application. *Thus, there is statutory provision that when facts which authorize the removal of a guardian come to the knowledge of the court, and no statutory application for his removal is made, it may order him to appear and show cause why he should not be removed,* and upon the hearing, may revoke his letters and appoint a successor." Bancroft's Probate Practice (2d ed) 422, § 1442. (Emphasis supplied.)

ORS 115.490, made applicable to guardians by ORS 126.505, provides:

"* * * It is the duty of the court or judge thereof to exercise a supervisory control over an executor or an administrator, to the end that he faithfully and diligently performs the duties of his trust according to the law."

A court of equity "will not suffer a wrong without a remedy." We hold, therefore, that plaintiff, as a friend and attorney of the ward and as an officer of the court, had authority to bring the matters shown by the petition to the attention of the court to the end that the rights of the ward might be fully protected

in accordance with the principles stated by the California court in *In re Des Granges,* supra, at p 598, as follows:

"* * * It is the duty of the court to zealously guard the property of a person who has been declared to be insane or incompetent * * *."

Moreover, assuming plaintiff did not have legal capacity to institute the instant proceeding, this was a matter that appeared on the face of the petition, and by failing to demur to the petition on the ground of lack of capacity to sue, the matter was waived by defendant. In this connection this court held in *Harney Valley Irr. Dist. v. Weittenhiller,* 101 Or 1, 7, 198 P 1093:

"The defect complained of, if it be one, appeared on the face of the petition in the instant proceeding. It was the duty, therefore, of the defendant, under Section 68, *supra,* to demur to the petition on the ground that 'the plaintiff has not legal capacity to sue.' Having withdrawn his demurrer, he waived that pleading. Inasmuch as it appeared on the face of the petition, the objection could be taken only by demurrer, so that the situation is controlled on this point by Section 72, which spells waiver of the objection."

We hold that in failing to remove the defendant, Ernest H. Miller, as guardian of the estate of Elva Maude Miller, the court abused its discretion. The order of the circuit court appealed from is, therefore, in all things reversed and set aside and the cause is remanded to the circuit court with instructions to enter an order removing the defendant, Ernest H. Miller, as guardian of the estate of Elva Maude Miller and appointing a disinterested and qualified guardian of the estate of Elva Maude Miller and for further proceedings in conformity with this opinion.